## Andy Warren v. The State.

### No. 3611.    Decided June 19, 1907.

**1.—Assault With Intent to Commit Rape—Contradicting Witness—Stranger.**

Where upon trial for assault with intent to commit rape, the prosecutrix was not a stranger, she was not within the rule that the credibility of her testimony could be sustained by other witnesses because of a rigid cross-examination.

**2.—Same—Insufficiency of the Evidence—Force.**

Where upon trial for an assault with intent to commit rape, the evidence showed that while the defendant's conduct was outrageous, it did not reach the point where the law requires it should go in order to constitute an assault to rape by force, the conviction was not sustained.

Appeal from the District Court of Bosque. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of an assault with intent to commit rape; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*J. M. Patterson* and *J. P. Word,* for appellant.—On question of general reputation of prosecutrix: Payne v. State, 50 S. W. Rep., 363; People v. Hulse, 3 Hill (N.Y.), 309; People v. Gay, 7 N. Y., 378; People v. Rector, 19 Wend., 569; State v. Owens, 109 Ia., 1. On question

of insufficient evidence to support conviction: Brown v. State, 127 Wis., 193, 106 N. W., 536; Devoy v. State, 122 Wis., 148, 99 N. W., 455; Bohlmann v. State, 98 Wis., 617, 74 N. W., 343; Bigcraft v. People, 30 Colo., 298, 70 Pac., 417.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for assault with intent to commit the crime of rape, three years being given appellant as his punishment.

Miss Lelia Everett was the prosecutrix. Five witnesses were introduced who, over appellant's objections, testified to the general reputation of the prosecutrix for truth and veracity, stating that it was good. The court signs this bill with the explanation that the defendant did not directly attack the reputation of the prosecuting witness, but did so by questions propounded to her on cross-examination, and also by the testimony of witnesses as shown by the statement of facts, to which the court refers, and makes a part of his explanation. If it is intended by this explanation that the court admitted the testimony of the sustaining witnesses because of a cross-examination of the witness, the ruling is erroneous. The rule will not authorize the introduction of testimony to sustain a witness because of a cross-examination. See Payne v. State, 40 Texas Crim. Rep., 290; Britt v. State, 21 Texas Crim. Rep., 215, and Rushing v. State, 25 Texas Crim. Rep., 607. The exception to this rule, whereupon a rigid cross-examination, which is intended to attack the credibility of the witness and show that he is lying, is in regard to strangers when used as witnesses, as in Phillips v. State, 19 Texas Crim. App., 158; Crook v. State, 27 Texas Crim. App., 198; see also Jeffreys v. State, 51 Texas Crim. Rep., 566, decided at the present term of the court for collation of authorities. The prosecutrix was not a stranger and not therefore within that rule.

It is contended also that the evidence is not sufficient to support the conviction of an assault with intent to commit rape. We are of opinion this assignment is also sound. Appellant was a married man, and it seems had been living apart from his wife for five or six years, as testified by the prosecutrix. She further testifies that he began waiting upon her during the year 1905, and continued to do so until the occurrence, which forms the basis of this prosecution. In April, 1906, she states she became engaged to appellant to marry him. On the night of September 6th he (appellant) went to the Baptist church where she and her mother and brother were attending services, and informed her (prosecutrix) that he had just come from Hamilton, and wanted her to marry him; that he had that day gotten a divorce from his wife, and had the license to marry prosecutrix in his pocket. To this she agreed; she, with her mother and brother, left the prayer meeting, and went to their residence, defendant informing the mother that he was going to marry prosecutrix that night at Hico, requesting

her consent. This, in a qualified way, was given; she expressed her dissent, but said her daughter had a right to marry, and she would not interfere. They left that night in a two horse buggy about 9:30 o'clock ostensibly for Hico. This girl, after giving an account of their meanderings along the road and through pastures and by residences, stated that they went by the house of Wilburn Reed, where defendant stopped and got some corn for his horses, stating that the livery stable would be closed when they reached Hico. She told him that he ought not to do that, but he said it would be all right, that Reed would not care. They had previously stopped at Alexander's house where appellant got his coat. After getting the coat and the corn they continued their road in the pasture until they reached a point near Duffau creek, where the buggy was driven out of the road into the brush and stopped; appellant got out and took the corn and threw it on the ground in front of the horses; she inquired, "What does this mean?" and appellant replied, "Lelia, time will reveal all things." That he then got back in the buggy, took a bottle of whisky out of his shirt bosom, and tried to induce prosecutrix to drink from it; this she declined; he then tried to pour it down her and make her drink it, and in attempting to do so spilled some of it on her dress; he then took a drink and set the bottle down in the buggy, and she threw it away. She then further testified, "He then caught hold of my left arm, and ran his left hand up under my dress and tried to pull my drawers off. I fought him all the time. He pushed my head back and tried to keep me from hallooing, but I did halloo as loud as I could, and tried to make him quit. He put his arm over my mouth; he hurt my left side and my neck. I screamed and cried and fought him until I was exhausted. I fought him all night long. I begged him to take me home, and told him if he did not I would get out and walk, and he said, "Get out, you God damned bitch; that is what I want you to do." I didn't get out because I was afraid to. I knew he was trying to have sexual intercourse with me, and after he found out that he could not, he tried to get me to consent to intercourse, stating that it would not be any harm, that he and I would soon be married; anyhow in two hours, but I refused and told him that I was not that kind of a girl, and told him that I would not marry him. I did not consent for him to put his hands on me, and to do the way he had done. We stayed there in the buggy all night; until about daylight the next morning; he would lay back in the buggy like he was asleep, and when I would move he would wake up. Several times during the night I tried to get him to take me home, but he refused to do so; after daylight he told me that he would take me home, and we started towards Iredell, going back out through the same gates that we came in at, and right on down the main road to Iredell, to my home. When we reached home I got out of the buggy, and he drove off. I went right on into the house. * * * I am a woman; the defendant is a man twenty-two years

old, and weighs 160 or 180 pounds." Further testifying, she (prosecutrix) stated that she was engaged to be married to defendant, and knew he was a married man, but had not lived with his wife in five or six years, and that he told prosecutrix that he had applied for and would obtain a divorce in about two weeks from that date. She stated that she did not take any clothes that night except those she was wearing; that they intended to come back the next day and get the remainder of her effects. The prosecutrix is 20 years of age, and weighs 124 pounds. She did not tell anything of this until the following Saturday week, this having occurred on Thursday night; her father was away from home, and upon his return she informed him and her mother of what had taken place between herself and defendant. She said she had not told it before that time.

A justice of the peace by the name of Cain testified that he knew the parties, and made a partial investigation of the case; he told prosecutrix's brother to bring the girl before him, or take her to Meridian. On the third day after this alleged occurrence, at least on Saturday, after it occurred on Thursday night, prosecutrix went to his office, accompanied by her brother; he testified, "When she came she stated to me that the defendant had not done her wrong, that is, her person." Her brother was present at the conversation; she was not sworn. This occurred a week before the father returned home.

Appellant introduced a witness by the name of Fellows, who testified as prosecutrix and appellant were returning home Friday morning, after being out in the pasture the night previous, they informed him that they were married; he doubted their statement, and told them he would not believe it unless they would kiss each other, whereupon the prosecutrix threw her arms around appellant and kissed him. This was defendant's witness, and his testimony was denied by prosecutrix. There was other testimony showing that they were seen the morning after the alleged transaction returning in the direction of prosecutrix's home in a buggy, and their relations were shown to be amicable. Taking the State's case, made by the prosecutrix, independent of the testimony introduced by appellant, we are of the opinion it does not show such a state of case as meets the requirements of the statute to constitute assault to rape by force upon a woman beyond the age of 15 years. Prosecutrix's testimony rather excludes the idea that appellant intended to have intercourse with her by using all necessary force to overcome all resistance. Under her testimony he undertook to have intercourse with her, undertook to tear off her drawers, and held back her head, but when he did not succeed in this he desisted, and tried to induce her through persuasion to grant his request; this she declined, and they remained together during the night in the buggy without any further attempt on his part. Under this statement the conduct of appellant was outrageous, but it did not reach the point where the law requires it should go in order to constitute an assault to rape by force.

Some criticisms are indulged in regard to the charge wherein the court undertook to submit the counter proposition of law as to what would not constitute an assault to rape. Upon another trial this would hardly occur, and in regard to the newly discovered testimony, we would say that upon another trial, the attendance of the witnesses, and their testimony can be secured.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*