## ANDY WARREN v. THE STATE.

### No. 4064. Decided October 28, 1908.

**1.—Assault to Rape—Evidence—Bill of Exceptions.**

Where upon trial of assault with intent to rape the bill of exceptions did not contain the letters to the introduction of which defendant objected, The same could not be considered on appeal.

**2.—Same—Evidence—Outcry.**

Upon trial for assault with intent to rape, testimony was admissible to show the reason of prosecutrix failure to make outcry; and that she did not tell her mother about the transaction for fear that her brothers would kill defendant and get into trouble.

**3.—Same—Evidence—Bill of Exceptions.**

Where upon trial of assault with intent to rape the defendant objected to the contents of a certain letter written by prosecutrix to her father being introduced in evidence, which objection the court sustained, and the bill of exceptions did not show in what way the ruling of the court injured defendant, the same could not be considered on appeal.

**4.—Same—Evidence—Letter.**

Where upon trial of assault with intent to rape the theory of the defense was that the prosecutrix left her mother's house on the night of the assault for immoral purposes with the defendant, etc., there was no error in permitting the State to introduce in evidence defendants letter which tended to show that prosecutrix left her mother's house on said occasion to meet the defendant believing that he was going to marry her.

**5.—Same—Evidence—Cross-examination.**

Upon trial of assault with intent to rape where the State proposed to prove a certain conversation between defendant and prosecutrix with reference to a certain letter written by defendant to her, there was no error in the court's ruling refusing to permit the defendant's counsel to take away from the State's counsel the witness and ask her what time this conversation occurred; because that was a matter for cross-examination.

**6.—Same—Evidence.**

Upon trial of assault with intent to rape there was no error in permitting the prosecutrix to testify what defendant said as to why he quit coming to her house to see her.

**7.—Same—Evidence—Motive.**

Where upon trial of assault with intent to rape the theory of the defense was that the prosecutrix consented to go with defendant on the night of the assault with a view of having sexual intercourse with him; and that of the State was that she left home in good faith with the belief that she was to marry the defendant, there was no error in permitting the State to show that prosecutrix when she left home on that occasion kissed her mother good-bye, etc.; to show the motive of prosecutrix in going with defendant.

**8.—Same—Evidence—Reputation of Prosecutrix.**

Upon trial of assault with intent to rape where the defendant by his testimony assailed the reputation of the prosecutrix for virtue, there was no error in permitting the State to prove the general reputation of prosecutrix for virtue and chastity.

**9.—Same—Evidence—Credibility of Witness.**

Upon trial of assault with intent to rape there was no error to permit the State to introduce a certain letter written by one of defendant's witnesses touching the relation between the prosecutrix and the defendant, and affecting the credibility of said witness and the weight of her testimony.

**10.—Same—Evidence—Handwriting—Expert Opinion.**

Upon trial of assault with intent to rape there was no error in permitting a witness, who had qualified himself as an expert on handwriting, to testify that certain letters affecting defendant's witness were written by the same person.

Appeal from the District Court of Bosque.    Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of aggravated assault and battery; penalty, a fine of $400 and twelve months confinement in the county jail.

The facts of this case are substantially contained in the opinion of the court upon former trial.    See Warren v. The State, 51 Texas Crim. Rep., 598.

*Dillard, Word & Pedigo,* for appellant.

*F. J. McCord,* Assistant Attorney-General for the State.

BROOKS, Judge.—This is the second appeal of this case.    The former appeal will be found in 51 Texas Crim. Rep., 598; 19 Texas Ct. Rep., 254.    For statement of facts see former appeal.

Appellant, on the present trial, was convicted of aggravated assault, and his punishment assessed at a fine of $400, and twelve months confinement in the county jail.

Bill of exceptions No. 1 shows that the State offered to prove by Charley Tidwell, who had qualified as an expert on handwriting, that the letter admitted to have been written by the witness Pearl McElroy and the letter No. 1 denied to have been written by her, were in the same handwriting and written by the same person. Counsel for defendant objected to this on the ground that it was an attempt to contradict the witness on an immaterial issue and that the proof had no tendency to prove a charge of assault to rape, and is only prejudicial to the rights of the defendant.    The objections being over-ruled, the witness answered that the letters were written by the same person.    The bill is defective in that it does not allude to or contain the letters in question, and we will not refer to the statement of facts to make out a bill.    The court says the letter was admissible to show feeling and interest of the witness.

Bill of exceptions No. 2 shows that while the prosecuting witness, Miss Lelia Everett, was on the stand, and being examined by counsel for the State, she was asked why she didn't tell or undertake to tell her mother about the transaction between herself and Andy Warren, and why she didn't tell her mother about it the next day after it happened.    Appellant objected for the reason that any transaction prosecuting witness may have had or any statements she might have made in his absence would be immaterial and irrelevant.    The objections being overruled, she stated: "I was afraid my mother would tell my brothers and I was afraid

they would kill the defendant. I knew they would kill him and get into trouble, and I was afraid they would be sent to the penitentiary." Failure to make outcry is a circumstance against the State's case. Certainly it is permissible for the State to show why outcry was not made.

Bill of exceptions No. 3 shows that while the prosecuting witness, Lelia Everett, was on the stand and being examined by counsel for the State, she was asked by counsel what day of the week she sent her little brother over to where her father was to carry a certain letter that she had written to her father. Appellant objected to any testimony with reference to the letter or its contents, because the letter appeared to have been written on the 16th day of September, 1906, and ten days after the alleged offense, and because it contained self-serving statements of the prosecutrix upon a matter long since and past, and because same was in the absence of defendant and could not bind him and is irrelevant and hearsay and immaterial. The court sustained the objection. Counsel then proposed to ask the witness with reference to the subject-matter of the letter; that is, if the letter was in reference to her trouble with Andy Warren, whereupon counsel for defendant objected for the reason that the letter itself would be the best evidence of its contents, and that the letter was not admissible. The court then stated that he would permit the witness to testify as to the subject-matter of the letter to the extent that she might state that the letter was in reference to the trouble between herself and defendant. The bill further shows 'the letter was offered in evidence by counsel for the State. Appellant objected, and the court sustained the objection, because there were statements in the letter made by the witness that were improper to go to the jury. We see no error in the ruling of the court. The bill does not show in what way it injured appellant.

Bill of exceptions No. 4 shows the State introduced a letter purporting to have been written by defendant to prosecutrix, to which appellant objected, because the letter was inadmissible since this is not a seduction case but is a case of an attempt to rape, and the letter was wholly immaterial and prejudicial to the rights of the defendant, and prior to the date of the alleged offense and is too remote and don't tend to prove rape or throw any light on the question of rape; and puts the defendant's reputation in issue without defendant going on the stand. The objections being overruled, the court said he admitted the testimony because it tended to prove a contract of marriage and tends to show that there was a matter of divorce being discussed between them, and shows the relation of the parties at the time, and is otherwise admissible to go to the jury for what they may deem same worth. The letter is as follows:

"Walnut Springs, Texas, March 1, 1906.

"Miss Lelia Everett,

"Iredell, Texas.

"My Dear Little Girl—I have been thinking of you ever since I seen you this evening and say, Lelia, I am sure sorry that I have done you like I have and if you will forgive me for the lies I have told you, I am sure I will never be guilty of telling a girl anything of the kind again, and I can tell you the reason that I didn't make my promise good, it was because I didn't have any divorce, but I am going to get one in about two weeks and then I can be able to fill my promise that I made and if you have not changed your mind I shall be glad to make my promise good. Say now sweetheart cant I call you that? I sure would be glad to know that I had my old girl back again, and say, Lelia, I guess that you have heard a whole lot about me, but it is like nearly all that we hear, it is a lie." The letter is quite lengthy, and we deem it unnecessary to quote the rest, but the above is quoted to show its relevancy. We hold that the letter was admissible. Furthermore, the court appends the following explanation to the bill: "This letter was admitted in evidence because it tended to support the State's theory in the case that Lelia Everett and the defendant were engaged to be married and as corroborating the testimony of Lelia Everett that she left her mother's house on the night of the assault believing that the defendant was taking her to Hico to marry her, and this evidence rebutted and contradicted the theory of the defendant in the case that Lelia Everett left home with intention of copulating with the defendant and was testifying to the fact of marriage and the divorce matter in order to cover up simply her own immoral conduct.

Bill of exceptions No. 5 shows the State asked the prosecutrix the following questions: "Miss Lelia, did you ever have any conversation with Mr. Warren after the receipt of this letter (letter of March 1, 1906) and after you say you had written a reply to this letter? Yes, sir." Whereupon counsel asked the witness: "What conversation did you have with him about it?" Counsel for defendant objected for the reason that the time was not shown, and for the reason that the court refused to permit counsel to ask the witness as to the time she had this conversation, and because it was not at the time the offense was committed, and is wholly immaterial and irrelevant. The objection being overruled, the witness stated: "It was in April when I saw him, about the first of April, on Sunday evening I was going home from church about one o'clock and we had not had dinner. John Mingus was in the buggy with him and he stopped me and wanted me to go driving with him, the defendant, and I told him I had not had dinner and he asked if I had gotten his letter and I told him I had. At that time I had

written a reply to him. He had told me that he had received the reply." The bill is approved with this explanation: "That counsel for the defendant wanted to take the witness away from the State counsel and ask the witness what time this conversation occurred, and about the letter, and this the court refused to do, because that was a matter they could cross-examine the witness upon when the witness was turned over to them." Clearly, this action of the court was proper.

Bill of exceptions No. 6 shows the State asked the prosecutrix the following question: "What did defendant say as to why he quit coming to your house to see you? Counsel for appellant objected to this question for the reason that it was too remote, being in the latter part of November, 1906, and because same was irrelevant and immaterial. The objection being overruled, the witness answered, "He came to our house to invite me to a party and I asked him to get out and he said my father had sent him word to not come and he could not get out any more." This testimony was admissible also.

Bill of exceptions No. 7 that Mrs. R. J. Everett, mother of the prosecutrix, was asked by the State what was the last thing her daughter did before leaving home with defendant the night they went to Hico to get married, to which appellant objected, because whatever acts took place between the old lady and the girl could not bind the defendant and throw no light on the transaction, and does not tend to prove that they were going off to get married, and is immaterial and prejudicial to the rights of the defendant. The objections being overruled, the witness answered: "She was shaking hands and kissing us all good-bye, me and her brothers; she put her arms around my neck and hugged and kissed me, and told me good-bye, and said she would be back home tomorrow evening. The tears were rolling down her cheeks." This bill is approved with this explanation: "That the defendant's theory and his defense in this case was that Lelia Everett consented to go with him with a view of having sexual intercourse with him, knowing that the defendant was not going to marry her, and the State's theory was, that she left home in good faith with the belief that she was to marry the defendant, and that he undertook to force her to have sexual intercourse with him, and that the testimony of the mother of Lelia Everett and Mrs. Madden Tidwell as shown by bill of exceptions No. 8 and which is also set out in the statement of facts, was allowed to go to the jury as tending to prove the State's theory in this case, and that the fact that Lelia Everett when she kissed her mother good-bye and cried was a circumstance to be considered by the jury in passing upon her motive in leaving her home and going with the defendant." The testimony was admissible. The same matter is complained of in bill of exceptions No. 8.

As shown by bill of exceptions No. 9, the State offered to prove the general reputation of the prosecuting witness, Lelia Everett, in the community where she resided for virtue and chastity prior to September 6, 1906. The defense objected for the reason that the State should not be permitted to bolster up the reputation of the prosecuting witness, and that it was immaterial and irrelevant in the case and prejudicial to the rights of appellant. Appellant by his testimony in this case had assaulted the reputation for virtue of the prosecuting witness, and it was pertinent testimony to show what her general reputation was.

Bill of exceptions No. 10 complains that the State offered in evidence a letter dated October 26, 1905, signed "Pearl and Arthur" and addressed to Miss Lelia Everett. Appellant objected on the ground that same was too remote, being written more than a year before the alleged offense, and is not in rebuttal of anything, being offered in rebuttal by the State, and is irrelevant and immaterial and don't tend to throw any light on the alleged offense. The letter complained of is as follows:

"Wednesday night, Iredell, Texas, October 26, 1905.
"Miss Lelia Everett,
          "Iredell, Texas.

"Dear Sister—I will write you a few lines to let you know (how) I am, and can still hear every word you say. You said you didn't think I should have treated a friend as I did you. I didn't consider you any friend at all, and if you thought I was your truest friend, I am sorry for you, for you are completely without a friend. I wrote the letter I dont deny it. Arthur and I read your letter and I thought I would answer it but understand it wasnt the first I ever wrote and put Andy's name to. He did not object in the least for me writing it, and if you want to get mad all right I dont care. You said you wasnt going to come over here any more, that is all right with me; if you dont want to come you can go to h——. Arthur said you could go to h—— for his part, although you need not be mad at him about the letter. I got it myself and answered it, and that wasnt half. Wilbourne Reed read that one Sunday morning and he and I answered it and Andy didnt care. So I will ring off. Oh yes, I got a red hat, green dress, yaller apron you know, coming to the front, but I am getting to (be) very stylish. Come over. I remain anything you want me to be.     "(Signed) Pearl & Arthur." This bill is approved with this statement: "That this letter was admissible to show the feeling of the witness towards Lelia Everett and was admissible to show the interest that the witness Pearl McElroy was taking in the relations between Lelia Everett and Andy Warren and the jury had the right to consider it as affecting her credibility and the weight to be given

to her testimony." Under the explanation of the court, the letter was admissible for the purpose stated.

Bill of exceptions No. 11 complains that the court permitted Charley Tidwell to testify as an expert, after qualifying as such; that the letters admitted to have been written by the witness Pearl McElroy and the letter No. 1 denied to have been written by her, were in the same handwriting and written by the same person. This clearly was admissible.

We have carefully reviewed all of appellant's assignments of error, together with those above discussed, and find no reversible error in the record.

The evidence amply supports the verdict, and the judgment is in all things affirmed.

*Affirmed.*

Ramsey, Judge, absent.

[Motion for rehearing denied December 10, 1908.—Reporter.]