### BEN HOLLAND v. THE STATE.

No. 728. Decided October 25, 1910.

**1.—Assault to Rape—Evidence—General Reputation of Prosecutrix for Chastity.**

Where, upon trial of assault with intent to rape, the defendant on the witness stand assailed the character of the prosecutrix for chastity, there was no error in permitting the State to introduce testimony supporting her general reputation for chastity. Following Warren v. State, 54 Texas Crim. Rep., 443.

**2.—Same—Conduct of State's Counsel—Husband and Wife—Practice.**

Where, upon trial of assault with intent to rape, the State's counsel called the defendant's wife upon the witness stand and asked her if she was the wife of the defendant, and then tendered her to defendant as a witness, there was no reversible error, but such practice is not proper. Following Coffey v. State, 60 Texas Crim. Rep., 73, and other cases.

**3.—Same—Evidence—Impeaching Witness—Collateral Matter.**

On trial of assault to rape it was error to permit the State to attack defendant's witness on collateral immaterial matters, with reference to a statement made by said witness to prosecutrix in defendant's absence.

**4.—Same—Evidence—Demeanor of Prosecutrix—Shorthand Facts.**

Upon trial of assault to rape there was no error to permitting the State to show demeanor of prosecutrix shortly after the occurrence of the alleged assault; this was a shorthand rendition of the facts. Following Powers v. State, 23 Texas Crim. App., 42, and other cases.

**5.—Same—Evidence—Impeachment of Witness.**

On trial of assault to rape it was reversible error to permit the State to attack the testimony of the defendant with reference to collateral and immaterial matters, and which was prejudicial and highly injurious to the defendant. Following Price v. State, 43 S. W. Rep., 96.

Appeal from the District Court of Angelina. Tried below before the Hon. Jas. I. Perkins.

Appeal from a conviction of assault with intent to rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. J. Townsend, Jr.,* for appellant.—On question of hearsay and attack on defendant's witness on collateral immaterial matter: Loyd v. State, 19 Texas Crim. App., 137; Rushing v. State, 25 Texas Crim. App., 607; Truitt v. State, 8 Texas Crim. App., 148; Wicks v. State, 28 Texas Crim. App., 448; O'Quinn v. State, 55 Texas Crim. Rep., 18; Roquemore v. State, 50 Texas Crim. Rep., 542; Chapman v. State, 45 Texas Crim. Rep., 479.

On question of impeaching witness on irrelevant issue: Huffman v. State, 28 Texas Crim. App., 174; Surrell v. State, 29 Texas Crim. App., 321; Hart v. State, 15 Texas Crim. App., 202; Dixon v. State, id., 271; Drake v. State, 29 Texas Crim. App., 265.

. On question of introducing testimony of prosecutrix general reputation for chastity: Zysman v. State, 42 Texas Crim. Rep., 432, 60 S. W. Rep., 669; Rushing v. State, 25 Texas Crim. App., 607; Farmer v. State, 35 Texas Crim. Rep., 270, 33 S. W. Rep., 232; Murphy v. State, 40 S. W. Rep., 978; Payne v. State, 40 Texas Crim. Rep., 290; 10 Ency. Evid., p. 586, sec. 4.

On the question of admitting testimony as to prosecutrix demeanor: Liles v. State, 58 Texas Crim. Rep., 310, 125 S. W. Rep., 921; Moore v. State, 7 Texas Crim. App., 608; Gehrke v. State, 13 Texas, 567; Wells-Fargo Co. v. Boyle, 87 S. W. Rep., 164.

On the question of misconduct of State's counsel in tendering defendant's wife as a witness: Moore v. State, 45 Texas Crim. Rep., 234; Boyd v. State, 33 Texas Crim. Rep., 470; Brock v. State, 44 Texas Crim. Rep., 335; Graves v. U. S., 150 U. S., 118; State W. Va. v. Woodrow, 2 L. R. A. (new series), page 862; 3 Jones' Law on Evid., 752.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, Judge.—This is an appeal from a conviction for an assault to rape, with a penalty of two years confinement in the penitentiary.

The indictment charged appellant with assaulting one Goldie Hicks, a woman, with the intent by force to ravish and have carnal knowledge of the said Goldie Hicks. The case was submitted to the jury on the issue of assault with intent to rape, aggravated assault, and simple assault. No complaint is made in the motion for new trial or in this court to the charge submitted in this case. We find in the record a great many bills of exception to the admission and rejection of testimony and to the argument of the prosecuting attorney in the trial of the case.

Bill of exceptions No. 4 complains at the action of the court in permitting the State to prove by a number of witnesses the general reputation of the prosecutrix, Goldie Hicks, as to her virtue and chastity and to the proof that it was good. The ground of the objection to this testimony was that her character for chastity was not an issue in the case, nor was same made so by the evidence offered on behalf of the defendant and the proof showing that she was not a stranger in the county where the case was tried. It may be stated as a general rule that in the trial of cases of this character the State will not be permitted to bolster up the testimony of the prosecutrix by proving her reputation for virtue and chastity unless the same is assailed by the defendant's testimony, or unless the proof shows that she is a stranger in the county where the trial takes place; nor will the State be permitted to bolster up her testimony because of her character being assailed or questioned upon her cross-examination. But in all cases evidence is admissible to

support the reputation of the prosecutrix for chastity whenever there is an effort on the part of the defendant, even though unsuccessful, to impeach the reputation of said witness. See Zysman v. State, 42 Texas Crim. Rep., 432, 60 S. W. Rep., 669; Rushing v. State, 25 Texas Crim. App., 607; Farmer v. State, 35 Texas Crim. Rep., 270, 33 S. W., 232; Murphy v. State, 40 S. W., 978; Payne v. State, 40 Texas Crim. Rep., 290. In the trial of the case the defendant, Ben Holland, in testifying in his own behalf stated that he was not working on Monday, the day of the trouble; that he was intending to leave on that day and that he went over to Roxie Johnson's house where the prosecutrix lived; that on Saturday previous he had received a note from the prosecutrix in which the prosecutrix stated that her mamma had gone away from home and would be gone several days, and that her stepfather would be at work on Monday morning and that there would be nobody at home but herself, and for him to come. He said he did not have the note; that it had been destroyed, but that his wife had gotten hold of the note on this Monday morning and had got after him about it, and that they had had a scuffle or fight and that his wife scratched him on the neck and then and there they separated, and that he went over to prosecutrix' house, found her there and her little brother was also there; that he owed her little brother some money—five or ten cents—and gave him a half dollar to go down to the commissary to have it changed, and this idea of the little boy going to the commissary to get the change was suggested by the prosecutrix; that as soon as the little boy left, she, the prosecutrix, commenced playing with him, when he protested and said he didn't feel like playing that morning, and gave as his reason for it that of the trouble with his wife, and that the prosecutrix stated that she didn't care; that it was nothing to her; that she wanted him to play with her and that she started to playing with him and he started out from the kitchen back in to the bedroom when the prosecutrix grabbed his hat and threw it in a little closet and by the side of the door and that the prosecutrix ran up behind him and grabbed him by both arms and that he turned around then and caught her and shoved her and she fell, and when she fell her head hit the back part of the kitchen and she lay there a little and got up and started to crying; that about that time the little boy came back from the commissary and asked his sister what was the matter and she replied, "Nothing; I am going to tell mamma." The defendant continuing said: "I didn't catch her behind the neck and by one leg and throw her down two or three times and get on top of her; if I had wanted to get on her that day I would not have had to take it; I would not have had to do anything but ask for it." This testimony clearly raises the question of prosecutrix' chastity. It was an effort on the part of the defendant to show that the prosecutrix invited him to the house and made all the preparations and

advised him of the absence of the family, and that she com-
menced fondling with him as soon as he entered the house and
showing conduct on her part, she being a girl and he a married
man, that was inviting to him to have intercourse with him.
His further statement that he would not have had to throw
her down to get it if he had wanted it and that he would only
have had to ask for it, was testimony impeaching the character of
the prosecutrix for chastity.   This testimony would raise · the issue
of the virtue of the prosecutrix and would make it permissible on
the part of the State to prove her general reputation and character
for chastity, for the conduct of the prosecutrix as detailed by the
defendant could not be regarded as the conduct of a pure and chaste
woman.   A question similar to this was before this court in the
case of Warren v. State, reported in 54 Texas Crim. Rep., 443, 114
S. W. Rep., ·380.   This court in that case held that "appellant by
his testimony in this case had assaulted the reputation and virtue
of the prosecuting witness and it was pertinent testimony to show
what her general reputation was.   We are, therefore, of opinion that
the court did not err in allowing the State to prove the general repu-
tation of the prosecutrix for virtue and chastity in that neighborhood.

The ninth bill of exceptions is to the action of the court in per-
mitting the State to call the defendant's wife upon the witness stand
and asking her if she was the wife of defendant and tendering her
as a witness to the defendant.   This bill of exceptions is quite lengthy
and sets out the application of the defendant for a continuance for
the want of the testimony of the witness Amanda Holland, his
wife, by whom he expected to prove that she caught the defendant,
her husband, and the prosecuting witness in her house once with
the front door closed, and that she caught them in her house fre-
quently alone with the door closed, and one time she saw defendant
and prosecutrix embracing and kissing each other.   This applica-
tion was overruled by the court and the defendant, while a witness
upon the stand, was asked by the district attorney on cross-examina-
tion if he had not made an application for continuance for the want
of the testimony of his wife by whom he could prove certain facts.
The defendant testified that the scratches found upon his neck had
been made by his wife on that morning when she found the note,
and while they were in a scuffle or fight.   He further testified that
if his wife were present he could prove these facts by her.   After
the defendant rested the State called Amanda Holland and placed
her on the stand and asked her the following questions:   "Q. What
is your name?   A. My name is Amanda Holland.   Q. What rela-
tionship, if any, do you bear to Ben Holland, the defendant in this
case?   A. I am the wife of Ben Holland, the defendant in this
case."   The district attorney, addressing the court in the presence of
the jury, then said:   "I now tender this witness to the defendant."
Defendant:   "We take a bill of exceptions to the district attorney's

calling the defendant's wife as a witness in this case against him, and presenting her before the jury in the manner done, as she is not competent to testify, and we, therefore, reserve an exception to such conduct on the part of the district attorney as it serves only to prejudice the jury against the defendant for his failure to use his wife as a witness in his behalf." District attorney, again addressing the court in the presence of the jury and referring to the defendant's wife, then upon the witness stand, said, "She (meaning defendant's wife) is competent for the defendant." Defendant: "We except to the questions asked by the district attorney of defendant's wife and in presenting her in the presence of the jury as a witness on behalf of the State, and in tendering her as a witness for the defendant in the manner hereinbefore stated, and in the conduct of the district attorney as hereinbefore stated, that the defendant did not use his wife as a witness in said cause, but stood her aside, all of the conversations, questions and conduct aforesaid occurring in the presence of the jury trying the case. To which action of the district attorney in presenting defendant's wife before the jury, and in tendering her to the defendant for his witness, and in the court's failure to control the conduct of said district attorney as aforesaid, the defendant then and there excepted for the reasons hereinbefore alleged." Such conduct on the part of the district attorney was improper and ill-advised and the district attorney should not pursue this course, as the fact of the witness being the wife of defendant and present could be proved by other testimony without defendant's wife being placed upon the stand by the State and the failure of the defendant to use the witness might in some cases work injury. We have held in a case similar to this decided but recently that the conduct of the district attorney in this respect was not such error as would reverse the case. See Dave Coffey v. State, decided October 12, 1910, in which case a distinction is drawn between the Coffey case and the case of Moore v. State, 45 Texas Crim. Rep., 234.

The first bill of exception is to the action of the court in allowing the State to prove by the witness C. C. Mathews that he went to Ella Burns' house, the said Ella Burns being a witness on behalf of defendant, about four weeks before the trial and that he saw one Ed. Holland there, and that when he went in there was a quart of whisky setting on the table and the witness asked whose whisky it was, to which Ed. Holland replied that it was his, and Ella Burns said they were going to drink it. Defendant at the time it was offered objected to said testimony for the following reasons: That said testimony was offered to impeach said witness in a manner not authorized by law; that said testimony was not binding upon the defendant in his absence, as it was shown that he was not present and did not participate in said conversation; that it was hearsay and its only purpose served to prejudice the rights of the defendant before the jury, no evidence being shown to connect the defendant,

even remotely with said transaction. And the court overruled defendant's objection to said testimony, defendant excepted. The witness Ella Burns had taken the stand and testified to a statement made to her by prosecutrix which was contradictory of her testimony upon the witness stand. She was then asked the question if Ed. Holland didn't come to her house one night and bring a bottle of whisky and if they didn't drink it. She denied this, and said it was true that Ed. Holland had been to her house and may have brought a bottle of whisky, but she did not drink any of it, nor did she tell the witness Mathews that Ed. Holland brought the whisky there and that they were going to drink it. We are not advised by the bill of exceptions for what purpose this testimony was offered. If it was offered for the purpose of impeaching the witness, then it was not proper because this was a collateral and immaterial matter and a witness can not be impeached on collateral matters.

Bill of exceptions No. 7 is to the action of the court in permitting the State over defendant's objection to ask the witness Zola Green the following question: What was Goldie Hicks' demeanor when she came to where you were as to whether she was calm, excited or otherwise, and to the answer made by the witness that she was a little excited and trembling and she began to cry while she was talking to the witness. This testimony was objected to as being irrelevant and immaterial and called for the opinion of the witness. We think this was but a shorthand rendition of the facts. It has been held in a number of cases that the opinion of an observer is admissible as to emotions, sentiments and affections which are really too plain to admit of concealment, but at the same time incapable of description and witnesses are permitted to say of a person he seemed frightened, he was greatly excited, he was much confused, he was agitated, he was pleased, he was angry, his manner was insulting. See Powers v. State, 23 Texas Crim. App., 42; Miller v. State, 18 Texas Crim. App., 232; Bennett v. State, 39 Texas Crim. Rep., 639, and in the case of Meyers v. State, 37 Texas Crim. Rep., 208, the following answer was held admissible: "The manner of defendant was not at all threatening, but was peaceable and quiet." See Dill v. State, 6 Texas Crim. App., 113; Allen v. State, 8 Texas Crim. App., 67; Hardin v. State, 8 Texas Crim. App., 653. This testimony was clearly admissible under the rules as established by this court.

Bill of exceptions No. 3 is to the action of the court in permitting the witness Mathews to testify as to a conversation had between the defendant and a Mr. O'Neal after defendant's arrest, with reference to defendant's selling O'Neal some furniture for $4. The defendant had testified that as he was being conveyed to jail by the officer Mathews, they went by Mr. O'Neal's house and that he called O'Neal out to make a trade with him in regard to some furniture. That he didn't sell his furniture to O'Neal, but to another. The

State put Mathews · on the stand and proved by him that it was Mathews that called O'Neal out and that O'Neal bought the property from the defendant and paid him $4 for it. The objection was made that this was a collateral and immaterial matter and that the State should not have been permitted to contradict and impeach the defendant upon this question. We are of opinion that the court was in error in admitting this testimony. It is insisted, however, on the part of the State that these matters were immaterial and therefore the defendant could not have been injured by this testimony. We answer if it was immaterial why should the State go to the great pains to secure this testimony to contradict the defendant as to the statements he made in the trade he had with O'Neal? Why does the State propose to prove and contradict the defendant by showing that it was witness who called O'Neal and not the defendant? Why contradict the defendant as to whom it was that he sold the property for $4. The defendant had taken the stand and testified in his own behalf denying that he had made any assault on the prosecutrix. There were no eyewitnesses other than the prosecutrix and himself. A sharp conflict between their testimony. If the defendant were to be believed he should have been acquitted. Now, the State attempts to throw into the scale to overbalance defendant's testimony, various contradictions made by him in regard to wholly trivial matters. For what purpose? Evidently the jury would be impressed with the idea that after proof of this contradiction was made and it showed that defendant was telling a falsehood about that matter, therefore he would tell a falsehood about what transpired between himself and prosecutrix. We think taking this exception, together with the exception with regard to the testimony of Ella Burns and the effort to impeach her in regard to a statement that she made about a matter that was wholly collateral, that it had a tendency to prejudice the minds of the jury against the defendant, and that contradicting him and impeaching him and his witness Ella Burns upon these immaterial matters, the jury was likely to be led away from the main issue in the case, and that such testimony had a tendency to lessen the weight that should be given to the testimony of defendant upon the trial of the case; was not only prejudicial to the defendant, but highly injurious to him before the jury. The admission of improper evidence to impeach a material witness for a defendant is not harmless error. See Price v. State, 43 S. W. Rep., 96. A witness can not be impeached by proof of contradictory matters which are hearsay and purely collateral. Mitchell v. State, 38 Texas Crim. Rep., 170. It is only when a witness' statements out of court are in regard to such matters as are relevant to the issue on the trial that they can be introduced to contradict the testimony of a witness. Walker v. State, 6 Texas Crim. App., 576; Butler v. State, 7 Texas Crim. App., 635; Johnson v. State, 27 Texas Crim. App., 163; Rainey v. State, 20 Texas Crim. App., 473.

Being of the opinion that the court was in error in allowing the State to contradict the defendant and the witness Ella Burns on wholly immaterial matters and that the same had a tendency to prejudice the rights of defendant before the jury, the case will be reversed and the cause remanded.

*Reversed and remanded.*