BUD BOATWRIGHT v. THE STATE.

No. 7236. Decided January 31, 1923.

Rehearing March 21, 1923.

**1.—Rape—Jury and Jury Law—Special Venire—Attachments.**

The absence of five special venire, were stated by the trial court, in his qualification to the bill of exceptions as resulting from excessive high water and severe rains immediately preceding the date of the trial, did not of necessity call for granting of attachments for said absent veniremen before the selection of a jury could proceed; it not appearing that any objectionable juror was forced upon defendant.

**2.—Same—Evidence—Outcry of Prosecutrix—Rule Stated.**

It is a well settled rule that testimony of statements made by the prosecutrix immediately following an alleged rape, as evidencing the outcry made by her, is admissible in evidence, especially upon the proposition of her want of consent.

3.—Same—Evidence—Conduct of State Counsel.

Where, upon trial of rape, the prosecutrix was subjected to a rigid cross-examination evidently to show that her story was a fabrication, there was no error in permitting State Counsel upon re-direct examination to ask her if there was any part of her testimony given on direct examination which was not true to point the same out.

4.—Same—Evidence—Intoxicated Condition of Defendant.

Where, upon trial of rape, the prosecutrix testified that defendant was under the influence of liquor at the time, there was no error to permit a witness who rode in a car with him on the same day after his arrest, that his acts and conversation were like a drunk man; this was no violation of the inhibition of confession when under arrest and unwarranted.

5.—Same—Evidence—Conduct of State's Attorney.

The remark of State's Attorney to a witness for defendant apparently as part of an effort to induce the witness to admit that she had made contradictory statements, etc., "to come clean now" is not reversible error.

6.—Same—Evidence—Reputation for Chastity.

Where the evidence of general good reputation for virtue and chastity was pertinent, and the time embraced therein was of such proximity to the time of the alleged rape as to shed light upon the proposition that she did voluntarily, engage in sexual intercourse with defendant at the time, the same was admissible. Following Thomas v. State, 36 Texas Crim. Rep., 616, and other cases.

7.—Same—Evidence—Isolated Acts of Immorality.

A witness may not be attacked as to his credibility by proof of isolated acts of immorality.

8.—Same—Evidence—Practice in Trial Court.

Where defendant objected to the question by the State to one of defendant's witnesses, if he knew the general reputation of defendant for truth and veracity, whereupon same was withdrawn and no answer given thereto, there is no reversible error.

9.—Same—Charge of Court—Definition of Force.

Where the indictment alleged a rape by force and threat, etc., there was no error for the Court in his charge to submit the definition of force, and to instruct the jury if they believed the alleged rape was accomplished by force and threats to convict.

10.—Same—Bill of Exceptions.

Objections to the question asked defendant while a witness if he had been indicted for other felonies presents no error; besides the bill of exceptions was defective, and not approved by the court.

11.—Same—Charge of Court—Defense Theory—Consent.

Where the Court's charge instructed the jury that if they found that the defendant had carnal knowledge of prosecutrix, but further found that such carnal knowledge was with her consent, or if they had a reasonable doubt thereof, they should find him not guilty; this was sufficient to present the only defensive theory in the case, and there was no error.

**12.—Same—Argument of Counsel.**

Where none of the remarks by State's Counsel bring the case within the rule forbidding argument which is abusive, inflammatory, or prejudicial, or statements of facts not in evidence, there is no reversible error.

**13.—Same—Rehearing—Continuance—New Trial.**

Where defendant's application for continuance was accompanied by a certificate from the physician of the absent witness stating that she was sick in bed, etc., and where the alleged testimony showed that it could not be true that defendant made the assault upon prosecutrix with his own pistol, and where this was only denied by defendant himself, the alleged absent testimony was material, and a new trial should have been granted.

**14.—Same—Declarations by Prosecutrix.**

Where it does not appear that prosecutrix's statements with reference to defendant's assault upon her were *res gestae*, this Court is unable to say whether the testimony came within the rule.

Appeal from the District Court of Wood. Tried below before the Hon. J. R. Warren.

Appeal from a conviction of rape by force and threats; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Jones & Jones*, and *Manry Hughes* for appellant.—On question of continuance, Self v. State, 13 S. W. Rep., 602; Dawson v. State, 25 id., 21; Presley v. State, 131 id., 332; Baggett v. State, 151 id., 560; Askew v. State, 83 id., 706; Taylor v. State, 164 id., 844.

On question of complaint by prosecutrix; Valdez v. State, 160 S. W. Rep., 341; Sharp v. State, 160 id., 369; Fuller v. State, 154 id., 1021; Sentell v. State, 30 id., 226.

*R. G. Storey*, Assistant Attorney General for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Wood County of the offense of rape, and his punishment fixed at five years in the penitentiary.

The indictment follows the form approved in many cases and charges that appellant "did then and there unlawfully ravish and obtain carnal knowledge of Lela Maxfield, a woman, by force, threats and fraud, without her consent." According to the testimony of Mrs. Maxfield, the alleged injured party, appellant came to her house in the absence of any other members of her family and by force and threats and the exhibition and use of a pistol compelled her to submit herself to him, she not consenting thereto. The defensive theory was that the act of intercourse was with the consent of the prosecuting witness, and same was but one in a succession of similar occurrences. A detailed statement of the testimony could

serve no useful purpose, and a sufficient statement of the facts will appear in a brief discussion of the points raised on appeal and urged as errors committed upon the trial.

The motion for continuance was properly overruled. Without controversy in any way, the bill of exceptions complaining of this action of the trial court is qualified by the statement that all of the witnesses named in the application for continuance appeared and testified on the trial except the mother of appellant. This witness lived in the county of the trial. She had been subpœnaed as a witness and was not present, but no reason for her absence is stated. Appellant testified he lived with his mother. The testimony attributed to the absent witness was that she would testify if present that appellant owned a pistol, and that on the morning of the alleged assault, and after he had left home to go to the place where said assault, if any, was committed, witness made up the bed occupied by appellant the night before and saw and observed his pistol under the pillow. We do not regard the testimony of such materiality as to demand a reversal of the case upon the proposition that the lower court abused his discretion in overruling the motion for new trial based in part on the refusal of said continuance. The alleged assault was committed at or about noon. A few hours thereafter appellant was arrested and admits that he had a pistol in his possession shortly before said arrest. A disinterested State witness testified that she saw appellant have a pistol in his hand shortly after the time fixed by prosecuting witness as that of said assault. There is nothing in the State's case which attempts to identify the pistol had by appellant at the time of the alleged assault, with any pistol belonging to him, or as one which he had at his house, or in possession of which he had theretofore been seen. We deem it well within the province of the trial court to conclude that had the mother of appellant been present and testified as attributed to her in the application for continuance, the result of the trial would have been unaffected thereby.

The absence of five special veniremen, stated by the trial court in his qualification to the bill of exceptions as resulting from excessive high water and severe rains immediately preceding the date of the trial, did not of necessity call for granting of attachments for said absent veniremen before the selection of a jury could proceed. Ordinarily the issuance of attachments for absent veniremen is proper, but where it is made to appear that the service of such attachments would be impossible or of no avail, because of the absence of such veniremen from the jurisdiction of the court, or the existence of facts which would render it impossible to serve the attachments, or facts which would render it impossible for the veniremen to come if attached, this would seem to take away any vice in the refusal of such attachments. For aught that appears in the bill of exceptions the jury was obtained from the number of veniremen who were present,

and no effort is made to show any objectionable. jurors was forced upon appellant. In such case we do not deem it error to decline to issue the attachments or to halt the proceedings until the presence of the absent veniremen could be secured. See Secs. 542-543, Branch's Ann. P. C., for authorities in point. A similar situation is discussed in Hughes v. State, opinion delivered October 15, 1922.

It is a well settled rule that testimony of statements made by the prosecutrix immediately following an alleged rape, as evidencing the outcry made by her, is admissible; and this is especially true when her attitude toward the alleged occurrence is challenged and the defense is based upon the proposition of her consent thereto. Appellant's bills of exception Nos. 3, 4 and 5 present his objections to testimony of statements made by the prosecutrix which come within this rule. See Sec. 1784, Branch's Ann. P. C., and Sec. 83 thereof as presenting applicable authorities.

Upon cross-examination of the prosecutrix she was asked a great many questions, the tendency of which, and that of testimony sought to be elicited from her, evidently was to show that her story was a fabrication, and that she in fact was not ravished by force or threats but that she consented to the act of intercourse. Upon redirect examination the State's attorney asked her if there was any part of her testimony as given on direct examination that was not true, he wanted her to point the same out. We do not regard this so violative of the limits of prope rinterrogation, as to make the error predicated thereupon, serious.

Prosecutrix testified that appellant was under the influence of liquor at the time he entered her home and committed the assault upon her. We can not agree with appellant's contention, in this state of the case, that it was erroneous to permit a witness who rode in a car with appellant after his arrest on the same day, to testify that from the appearance of appellant, his acts and conversation, he was like a drunk man. We deem this no violation of the law inhibiting testimony of confessions or incriminating acts while under arrest and unwarned. This is complained of in appellant's bills of exception Nos. 7 and 8.

The remark of the State's attorney to a witness for defendant, apparently as part of an effort to induce the witness to admit that she had made statements in the county attorney's office contradictory of her testimony as given upon the witness stand, to the effect that the attorney wanted the witness to "come clean now," would not seem to be of injury to the appellant nor a transgression of the rules of procedure such as would call for any reversal.

The statements made by prosecutrix to her step-daughter following the alleged assault and being in substance that appellant had forced her with a gun, were not objectionable. It is made to appear that the statement was made by said witness a few minutes after the occurrence charged against appellant and same would be admissible

under either the rule of res gestae or that of speedy outcry. We also deem testimony of the agitated appearance of said witness and that she was crying and seemed worried and troubled, the time referred to being recently after the alleged assault, admissible as rebutting the defensive theory that the assault was with her consent.

Appellant has four bills of exception complaining of testimony introduced by the State showing in substance that a short time prior to the alleged occurrence and prior to the marriage of prosecutrix to her husband, which event occurred about a year before said assault, the prosecutrix bore a good reputation for virtue and chastity. The evidence was pertinent, and the time embraced therein was of such proximity to the time of the alleged rape as to shed light upon the proposition that she did not voluntarily engage in sexual intercourse with appellant at said time. Ballew v. State, 48 Texas Crim. Rep., 46, 85 S. W. Rep., 1063; Thomas v. State, 36 Texas Crim. Rep. 616. There seems no doubt of the fact that when the defense to a rape case is based upon the contention that the act was had with the consent of the prosecutrix, this permits the introduction of testimony of her good reputation for virtue and chastity. Warren v. State, 54 Texas Crim. Rep., 443, 114 S. W. Rep., 380; Jacobs v. State, 66 Texas Crim. Rep., 146, 146 S. W. Rep. 566.

We think the proposition advanced by appellant's bills of exception Nos. 17 to 22 inclusive, settled adversely to his contention. A witness may not be attacked as to his credibility, by proof of isolated acts of immorality. Mr. Branch cites many authorities in Sec. 168 of his Annotated P. C., which sustain the soundness of this rule.

The State in its cross-examination of a defense witness who had testified to the bad reputation for virtue and chastity, of one of the State witnesses, asked said witness if he knew the general reputation of appellant for truth and veracity. Appellant objected to this question, whereupon same was withdrawn and no answer given thereto. We do not consider the bill complaining of this to present any serious error.

By three bills of exception complaint is made of the court's charge defining force and submitting this as an issue. We set out above the form of the indictment charging a rape by force and threats, and are of opinion that there was no error in submitting the definition of force, or of instructing the jury that if they believed the alleged rape was accomplished by means of force and threats, they should convict.

Appellant's bill of exceptions No. 30 is not approved by the trial court. Same only presents objections to the questions asked appellant while a witness if he had been indicted for other felonies and would in no event present any error.

There is a complaint directed at the court's charge for failure to present the appellant's defense in an affirmative manner. The charge

instructed the jury that if they found that the defendant had carnal knowledge of Lela Maxfield, but further found that such carnal knowledge was with her consent, or if they had a reasonable doubt thereof, they should find him not guilty.    This we deem sufficient to present the only defensive theory found by us in the record.    It would seem idle to us to argue the proposition that the court should have charged the jury that the ravishment was by threats alone, when the prosecutrix testified to the exhibition and use at the time and for the purpose of accomplishing said act, of a pistol by the accused.

Various bills of exception taken to the argument of the State reflect the fact that the prosecuting officer said he would now turn over this outrageous case to the jury, and that at another time he stated that appellant's own testimony that he had intercourse with prosecutrix in the cemetery, branded him as the meanest man in the world, and that at another time said attorney stated, while looking at appellant, that ''You ought to be stood.''    None of these remarks seem to bring the case within the rule forbidding argument which is abusive or which contains inflammatory or prejudicial appeals, or statements of material facts not in testimony; and in our judgment none of said argument would call for a reversal of the case.

The only remaining bill of exceptions is that taken to the refusal of the motion for new trial.    Said motion is accompanied by the affidavit of appellant's mother, the effect of which is that if present she would have testified as stated in the application for continuance. We have discussed this and expressed our view of it above.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

March 21, 1923.

HAWKINS, JUDGE.—In the light of the motion for rehearing we have concluded that upon the original consideration of the case we did not grasp the significance of the testimony expected from appellant's mother.    It was stated in our opinion that no reason for her absence was shown.    In this we were in error.    While not material perhaps, it is fair to state that a certificate from her physician was attached to the application stating that she was sick in bed, and her affidavit attached to the motion for new trial is to the same effect. The importance of the evidence of this absent witness cannot be fully understood without a statement of some of the facts.

As usual in prosecutions of this character, the State relied almost · wholly upon the testimony of the woman alleged to have been assault-ed, and appellant to the same extent was compelled to rely upon his

own evidence. Therefore, any legitimate testimony for either side throwing light upon the transaction becomes exceedingly desirable. Mrs. Maxfield claimed that appellant had a pistol and threatened to kill her if she did not yield her person to his use, and for the reason only that she feared for her life she submitted. There was no evidence of resistance; no torn garments, no disarranged furniture. If the pistol be absent the state's case falls. Appellant's story is that he had on previous occasions had intercourse with prosecutrix, and that he was at her house on the day of the alleged offense by pre-arrangement with her; that the day before prosecutrix told him her stepdaughter, Mrs. May Baldwin, was going to town next day to have some kodak films developed and for him to come while May was in town; that he watched from his house, saw May Baldwin leave the home of prosecutrix, and then went there in accordance with the previous agreement; that after he and prosecutrix had several drinks of whisky together she consented to engage in sexual pleasure with him, but expressed fear lest Mrs. Baldwin and her stepson, Dock Maxfield, might return and catch them, as it was then near the dinner hour; that she pulled the window shades down, locked the door, then unlocked it, went outside, looked up and down the road, returned and relocked the door, when the act of intercourse took place; that after they were through prosecutrix raised the shades but omitted to unlock the door; that it was only a few minutes later when Mrs. Baldwin and Dock Maxfield reached the house. It is a significant fact that Mrs. Baldwin testifies the door was thumblatched, and her brother kicked on the door before prosecutrix unlocked it. May testified that appellant had a pistol in his hand when she and Dock Maxfield entered the house. Although the facts related make it apparent that Dock would have been an important witness, he was not called by either party, and if his absence is accounted for we have overlooked it. Appellant denies that he had a pistol on the occasion; he asserts that he owned only one pistol, described as a large black, or dark one, and that he left it at his mother's house under the head of the bed where he slept with Dock Maxfield the night before; that he went direct from his home to the house of prosecutrix and saw no one on the way, and got no pistol from anyone. He says when May Baldwin came into the room she looked at him and prosecutrix, then at the bed, which bore evidence of disarrangement where the act of intercourse took place, and then again looked at both appellant and prosecutrix. All witnesses agree that in a few minutes after Mrs. Baldwin and Dock reached the house he and appellant left. The State's evidence is that as soon as they were gone Mrs. Maxfield made complaint to Mrs. Baldwin, and they together went to the office of the justice of the peace, where they presumably reported the matter. Appellant says he and Dock went to town where they remained some two hours, then went to appellant's home where they ate dinner; that

while there Dock got his (appellant's) pistol from the head of the bed and put it in his belt under his shirt; that they then went back to the home of prosecutrix;—that he saw her there but had no information she had charged him with rape;—that Dock got a bottle of whisky which he put in a paper sack, intending to deliver it to some one, and left appellant's pistol on the bed; that they again went to town where they remained for about an hour, and then returned the second time to prosecutrix's house;—that shortly thereafter the officers came and said they wanted him;—that appellant had been drinking and thought the officers intended to arrest him for drunkenness, at which he entered some protest and that Dock Maxfield told the officers to go ahead back to town and that he would see that appellant came in a little while; that he was not disturbing anything there; that Dock Maxfield was under the impression the officers had gone back to town to get a search warrant in connection with whisky which appellant says was in the house of prosecutrix. About this time appellant learned for the first time he says from Dock that prosecutrix had charged him with rape. He seems to have become enraged thereat and commenced looking for his pistol but found it had been removed from the bed. It later developed that prosecutrix had the pistol and had gone to a nearby neighbor's house with it. Appellant secured Dock's pistol and went to the neighbor's hunting for prosecutrix, threatening to kill her on account of what he alleged to be a wrongful charge she had made against him.

From the foregoing statement the materiality of the testimony of Mrs. Boatwright may be at once discerned. The fact that prosecutrix asserted that appellant made the assault upon her with a pistol, that May Baldwin claimed to have seen the pistol in his hand at the time she entered the house, that some time during the afternoon prosecutrix was in possession of a pistol shown to have belonged to appellant, with no evidence save appellant's denying that he had a pistol at the time of the alleged assault and in explaining the presence of his pistol in the Maxfield house later on during the day, makes it vitally important that the jury have the proposed testimony of Mrs. Boatwright to the effect that appellant's pistol was in her home and under the head of his bed at the time of the alleged assault. Mrs. Boatwright would further testify that appellant and Dock Maxfield came to her house some time shortly after noon and ate dinner, which would tend to support the statement of appellant that it was at that time his pistol was taken by Dock Maxfield from the bed where he claims to have left it when he went to the Maxfield home before the alleged assault and where his mother claims she subsequently saw it at the time she was making up his bed.

A closer examination of the record leaves us in some doubt as to whether the statement of Mrs. Baldwin to the effect that prosecutrix had told her appellant "had assaulted her with a pistol" should

have been admitted as a res gestae statement of prosecutrix. The court appears not to have admitted the details of the report made by prosecutrix to Mrs. Baldwin, but during examination of the latter the statement complained of went into the record. When she was being interrogated about the telephone conversation with the officers she claimed that prosecutrix had not at that time told her all about the transaction. At what time the prosecutrix informed May Baldwin that appellant had assaulted her with a pistol is therefore left in doubt, and we are unable to say whether it came within the rule of res gestae.

Having reached the conclusion that we were in error in not sustaining appellant's complaint because of the failure of the trial court to grant him a new trial in order to obtain the testimony of his mother, the affirmance is set aside, appellant's motion for rehearing is granted, the judgment ordered reversed and the cause remanded for re-trial.

*Reversed and remanded.*