## GRAYSON v. UNITED STATES.

### No. 11391.

Circuit Court of Appeals, Eighth Circuit.

Nov. 20, 1939.

Sam Robinson, of Little Rock, Ark., for appellant.

W. H. Gregory, Asst. U. S. Atty., of Little Rock, Ark. (Sam Rorex, U. S. Atty., of Little Rock, Ark., on the brief), for appellee.

Before THOMAS and VAN VALKENBURGH, Circuit Judges, and DEWEY, District Judge.

VAN VALKENBURGH, Circuit Judge.

On or about October 14, 1935, appellant, in her own automobile, transported her niece Margaret Jones, now Margaret Thompson, from Blossom in the State of Texas to Hot Springs in the State of Arkansas. Appellant at that time was, and for several years prior thereto had been, a prostitute and an operator of houses of prostitution. At the time of the transportation she was operating the Hatterie Hotel in Hot Springs, Arkansas, as a house of that character, and was known in Hot Springs as Grace Goldstein. She had previously been known under several other aliases.

On the date first above mentioned she attended a family reunion at Blossom, Texas. She was a sister of Margaret Jones' mother, and had a number of relatives at Blossom, in a somewhat straitened financial condition, to whom, especially to her mother, she had contributed substantial financial aid. Margaret Jones was at that time living with her parents on a farm near Blossom. She was unemployed and anxious to find work; appellant told her she might find work in Hot Springs if she cared to go there. Appellant went to Margaret's parents, who were ignorant of appellant's profession, and sought permission for Margaret to return to Hot Springs with appellant in her car. This was granted. She stated that, because of the approach of the Christmas holidays, she thought she could secure work for Margaret with some friends in Hot Springs.

On arrival in Hot Springs they went directly to the Hatterie Hotel. Margaret did not know it was a house of prostitution, and spent the first two weeks with appellant in her bed room. Appellant bought her "a suit and an entire outfit, hat, purse, dress, and everything to go with it". Later she bought Margaret an evening gown, and the next day took her to a beauty shop for a treatment. Margaret was never taken to any place in Hot Springs as an applicant for a position. Gradually appellant unfolded to her the nature of the Hatterie Hotel and its business. She was made aware of the charges to be made for "dates", and the prospective profits that would inure to the benefit of herself and parents. Appellant was to receive a fixed percentage of Margaret's earnings, and was to charge her with a fixed room rental. Some additional things, including an evening gown, were bought for and charged to Margaret, who thereafter engaged in this immoral commerce. Appellant collected the agreed percentages out of Margaret's earnings, as she did from other inmates. Two of these inmates testified to the effect that appellant had said that Margaret, at her home, was throwing her life away for nothing, and that she might as well be getting something out of it; that she might as well be helping her people. Appellant, in her defense, entered a denial to the charge that she brought her niece to Hot Springs for immoral purposes, and introduced witnesses who testified that she applied for employment for Margaret. A more detailed recital of the record is deemed unnecessary and undesirable for the purposes of this opinion. We think it sufficient to state that, in our judgment, the evidence adduced amply supports the charge made and the verdict and judgment in response thereto.

In argument and brief counsel for appellant assigns the following points upon which she relies:

"1. The testimony of a weak witness cannot be corroborated or bolstered up by showing that the testimony given at the trial was the same as that given on some prior occasion.

"2. It constitutes error on the part of the government to put the general reputation of a defendant in issue, over defendant's objection, where defendant has not first put the question in issue.

"3. It constitutes error on the part of the trial court to instruct the jury in such manner as to invade its province and to take away from it, or to influence, its right to make a finding of fact on the necessary element of intent.

"4. It constitutes error on the part of the trial court either himself to make comments or ask questions during the trial of the case, or to permit government counsel to do so, over defendant's objection, that might be fairly calculated to prejudice the rights of the defendant, or to interfere in any manner with his constitutional guaranty of a fair and impartial trial, particularly in cases where the evidence on behalf of the government is not strong or conclusive.

"5. Error, though merely technical, will lead to reversal where the evidence of guilt is not clear."

■ 1. On direct examination Margaret Thompson's testimony was strongly to the effect that she was transported to Hot Springs by appellant, was introduced into a house of prostitution, and thereafter entered upon that immoral conduct with the knowledge and at the suggestion of appellant. On cross-examination she was confronted with a statement signed by her in a lawyer's office prior to the trial of appellant in the district court. In this statement, not under oath, she said that her aunt never knew anything about her personal conduct while she was at Hot Springs; that she was a guest of her aunt there, and had never paid her any money for board and lodging. On redirect examination she said appellant induced her to make that statement, on the ground that it would get her (appellant) out of trouble, and the entire matter could be hushed up and kept from public knowledge. The witness had been married in the meantime, and the story had not been told in Paris, Texas, where she then lived. In the course of this redirect examination the following question was asked by the prosecuting attorney:

"Q. Is the story you have told here on the stand the one you told the F. B. I. in the beginning, and the one you told the Grand Jury here? A. Absolutely identical.

"Q. It is the truth? A. It is the truth.

"Mr. Robinson (for defense): I ask that be stricken out, that last question about it being the truth".

This objection (so-called) was overruled, and this is the action assigned as error in the first point urged. This point is predicated upon the rule announced in Yoder v. United States, 10 Cir., 71 F.2d 85, condemning the practice of permitting a discredited witness from being "bolstered" by testifying that her testimony on the stand is the same as that given before the grand jury. Other cases cited do not appear to be in point; but, in any event, the rule invoked is inapplicable. The objection made was to the statement that the witness' testimony at the trial was the truth. Certainly that statement was competent and relevant.

■ 2. This point is based upon certain questions asked by the district attorney during the testimony of Bryan Grayson, a character witness introduced by the defense to attack the reputation of Margaret Thompson for truth and veracity. In the process of cross-examination the witness was asked whether he knew Grace Goldstein's reputation. The colloquy that followed was productive of little probative effect, but counsel urges that the object was to put in issue the general reputation of appellant,—that matter not having been made an issue by appellant herself. As matter of fact appellant had already testified in her own behalf, and had freely admitted her business of prostitution. Her general reputation was already before the jury, and the questioning to which this objection is raised merely sought to test the credibility of the character witness, and had no prejudicial effect as charged.

3. Counsel for appellant relies most strongly upon the charge of the trial court on the crucial element of the intent and purpose with which the transportation was made. All other matters, essential to the commission of the offense charged, were admitted and undisputed, so that the one issue left for the determination of the jury was the purpose and intent with which the transportation was made. Following is the section of the charge at which criticism is directed:

"You may judge of the defendant's intent by what she did, as she is presumed to intend the natural consequences of her acts. You cannot look into the mind of a person and tell what her intent is, but you can look at what she does and says while committing the act complained of and judge of her intent, and if you believe from all the evidence in the case that she intended to do the thing she is charged with doing, then you would be justified in finding her guilty of intent to commit the offense charged. The defendant in this case has testified that she brought this girl Margaret Jones, to Hot Springs with a view and intent to procure for her a position in Hot Springs, and she has also introduced evidence to corroborate and substantiate this testimony, and as a circumstance carrying out her intention. These facts are to be considered by you, together with all the other facts in evidence, in determining the guilt or innocence of the defendant".

■ It is contended that this invades the province of the jury and takes from it its prerogative of determining the intent of appellant at the time the transportation took place. The objection is aimed particularly at the use of the word "presumed", the contention being that the word raises a conclusive presumption of intent.

There is, of course, no presumption of law to that effect. Hibbard v. United States, 7 Cir., 172 F. 66, 18 Ann.Cas. 1040; McCallum v. United States, 8 Cir., 247 F. 27; Drossos v. United States, 8 Cir., 16 F.2d 833; Shaddy v. United States, 8 Cir., 30 F.2d 340. The use of the words "presume" or "presumption" in this connection is not to be approved. No doubt inferences as to intent may be gathered from subsequent acts and conduct, but no presumption of law follows to invade and restrict the province of the jury. However, we do not think the language employed had that effect in the instant case. The question of the particular intent was not treated as a question of law, but as a matter to be submitted to and resolved by the jury. The charge as a whole must be considered. In this same paragraph the jurors are admonished that they would be justified in finding the intent only from all the evidence in the case. The following language is especially significant:

"The defendant in this case has testified that she brought this girl Margaret Jones to Hot Springs with a view and intent to procure for her a position in Hot Springs, and she has also introduced evidence to corroborate and substantiate this testimony, and as a circumstance carrying out her intention. These facts are to be considered by you, together with all the other facts in evidence, in determining the guilt or innocence of the defendant".

Further on, this language appears:

"You are instructed that the law makes the intent and purpose an element of the crime, and, if the journey was planned with no immoral purpose then or at or before the time of arriving in Arkansas, no crime was committed no matter what may have occurred thereafter."

We do not feel that the jury was confused or restricted in its judgment by anything said by the court in its charge. Compare Agnew v. United States, 165 U.S. 36, 37, 17 S.Ct. 235, 41 L.Ed. 624.

4. We have examined the comments and questions made and asked by court and counsel which are alleged to have interfered with the fairness and impartiality of the trial. We find this assignment so wanting in merit that we do not think it justifies quotation and extended discussion here. The court, in our opinion, was extremely fair in its submission of the case, and in stating and safe-guarding the contentions and rights of the defendant.

In his brief counsel for appellant frankly says:

"Appellant conceives the rule in this circuit to be well settled that this court will not reverse for error in any case where the weight of the evidence in favor of the government is so great as conclusively to show the guilt of the accused".

This statement is, perhaps, rather an extreme one, because some error conceivably may be so gross as to challenge any judgment though well supported otherwise by the record. However, the rule adopted by this court is in harmony with that now generally prevailing, and has especial application to the record on this appeal. Morgan v. United States, 8 Cir., 98 F.2d 473, 477; Mansfield v. United States, 8 Cir., 76 F.2d 224; Miller v. United States, 8 Cir., 21 F.2d 32. The guilt of appellant is clear. Her conduct falls within the terms of the statute, 18 U.S.C.A. § 397 et seq. and its uniform construction by the courts. Athanasaw v. United States, 227 U.S. 326, 33 S.Ct. 285, 57 L.Ed. 528, Ann.Cas.1913E, 911.

We find in the record no justification for reversal, and the judgment below accordingly is affirmed. It is so ordered.