**STATE of Missouri, Plaintiff-Respondent,**

v.

**Larry Nathaniel SMITH,
Defendant-Appellant.**

**No. KCD 27706.**

Missouri Court of Appeals,
Kansas City District.

March 1, 1976.

William G. Mays, II, Public Defender, 13th Judicial Circuit, Columbia, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant, tried on a charge of murder, second degree, was found guilty by a jury of manslaughter. The trial court, in view

of the jury's inability to agree thereon, fixed defendant's punishment at eight years confinement in Missouri Department of Corrections.

Defendant impugns the legality of his conviction by citing three rulings of the trial court as harbingers of reversible error on appeal: (1) in permitting the state, over objection of defendant that such invaded the province of the jury, to ask and elicit an affirmative answer from one of its witnesses on redirect examination that he had responded truthfully to questions posed to him on direct and cross-examination; (2) in permitting the state to improperly cross-examine the defendant by interrupting him before he had completed answering certain questions asked by the state; and (3) in permitting the state during its closing argument, over objection of defendant, to play selected portions from a taped confession of defendant which had been offered and received in evidence as a part of the state's case.

A skeletal recital of facts will suffice since defendant does not question the sufficiency of the evidence to sustain his conviction. The jury could have reasonably found as follows: On May 24, 1973, defendant, formerly a student at the University of Missouri, Columbia, was residing in the "Black Culture House" in Columbia, Missouri. During the late morning hours of May 24, 1973, Calvin Patterson, an acquaintance of defendant, visited defendant in his room. An argument erupted and Patterson left defendant's place of residence. While Patterson was in the process of leaving, defendant armed himself with a "single action" .357 magnum revolver[1] and followed Patterson. When defendant reached the top of the front steps of his place of residence, Patterson was in the sidewalk area approximately twenty-three feet in front of and facing defendant. At that point defendant fired one shot at Patterson. Defendant kept advancing toward Patterson and fired a second shot at him. When the second shot was fired by defendant, Patterson had his hands in front of his chest and was still facing defendant. While Patterson was reeling and falling from the impact of the two shots just mentioned, defendant fired three more shots at Patterson. An autopsy of Patterson's body disclosed six entrance wounds at various locations—chest, face, back, abdomen, leg and hand. One shot accounted for two of the entrance wounds, the one in the hand and one of the five remaining entrance wounds. According to the pathologist, the bullet that entered decedent's chest pierced his heart causing a fatal wound. A member of the Columbia, Missouri, police department, who was in the near vicinity at the time, heard the shots and immediately proceeded to the scene and arrested defendant. At the time of his arrest, defendant was still in possession of and holding the .357 magnum revolver. The arresting officer removed one live cartridge and five spent cartridges from the .357 magnum revolver. The autopsy revealed the presence of three bullets in decedent's body. One of the bullets found in decedent's body during the course of the autopsy was traced as entering decedent's chest and piercing his heart. A taped confession given by defendant was offered and admitted into evidence as a part of the state's case. The admission of said confession has not been questioned on appeal.

The three rulings of the trial court which defendant relies on as presaging reversal of his conviction will be seriately reviewed.

First, did the trial court commit reversible error in permitting the state, over objection, to ask and obtain an answer from its own witness that he had testified truthfully on direct and cross-examination? A perusal of the record leading up to the ruling condemned by defendant reveals the following sequence of testimonial events. During the

---

1. So described in the evidence because the hammer had to be manually cocked each time it was fired.

presentation of its case in chief the state called Dan Healan as a witness. Healan was working in an office next door to defendant's place of residence at the time in question. While doing so, he heard the first shot fired by defendant. Thereupon, he looked up from his work and had an unobstructed view of defendant and decedent Patterson during the course of some of the ensuing shots fired by defendant at decedent. Needless to say, Healan's testimony was damaging to defendant. Defense counsel, during his cross-examination of Healan, brought out the fact that Healan had told investigating police officers, and, as well, an investigator from the public defender's office, that he had not witnessed the shooting. When so confronted on cross-examination, Healan recanted his earlier denials that he had not witnessed the shooting with the explanation that (1) he was afraid to get involved, and (2) the investigator from the public defender's office had failed to identify himself. Healan, on cross-examination, again affirmed that he had, in fact, been an eyewitness to the shooting and the matters to which he testified on direct examination. The state, on redirect examination of Healan, posed and elicited the question and answer which defendant now faults. The crux of defendant's argument is that the answer elicited by the objectional question invaded the province of the jury since it permitted witness Healan to pass on the truth vel non of his own testimony given on direct examination. The prosecutor apparently got carried away with his own exuberance in his attempt to rehabilitate witness Healan. Although his mode of doing so is not to be condoned, this court is not unmindful that the exuberances of counsel during trial do not always measure up to the laudable but seldom achieved goal of a perfect trial. Concomitantly, "[o]nly prejudicial error is reversible error." *State v. Mayberry*, 272 S.W.2d 236, 240 (Mo. 1954). See also *State v. Rohman*, 261 S.W.2d 69, 72 (Mo.1953).

Surprisingly, there appears to be a paucity of authority specifically dealing with the type of question which defendant claims the trial court erroneously permitted witness Healan to answer. What little authority exists appears to go in both directions. Defendant, although citing numerous cases standing for the general proposition that the jury is the sole judge of the credibility of witnesses, cites and principally relies upon *Wright v. State*, 149 Ala. 28, 43 So. 575 (1907), wherein the Supreme Court of Alabama held that the trial court did not err in sustaining an objection by the state to the following question posed to one of its witnesses by defense counsel on cross-examination, "When you stated that Bob Brown stepped outside of the road . . . you did not tell the truth?" The Supreme Court of Alabama tersely disposed of the matter adversely to the accused by holding that the question was "intolerable", invaded the province of the jury, and called for a conclusion of the witness. A later Alabama case, *Elliott v. State*, 48 Ala.App. 515, 266 So.2d 318 (Ala.App.1972), also cited and relied upon by defendant, is not apropos since it involved the propriety of permitting one witness to testify that another witness had lied.

The state cites and principally relies upon 98 C.J.S. Witnesses § 419, *State v. McKinney*, 475 S.W.2d 51 (Mo.1971), and *Grayson v. United States*, 107 F.2d 367 (8th Cir. 1939). The following statement is found in 98 C.J.S. Witnesses § 419, pp. 224–225: "Where the cross-examination has been such as tends to discredit the witness, a line of reëxamination directed toward rehabilitating him is proper. After a cross-examination which tends to show that the witness' testimony was fabricated, it is proper to ask the witness whether any part of the testimony is not true; and where he has been confronted on cross-examination with a written statement at variance with his testimony on direct examination, he may be questioned on redirect examination as to whether his testimony on direct examination was true." *Grayson v. United States*, supra, and *Boatwright v. State*, 94 Tex. Cr.R. 87, 249 S.W. 1075 (1923), *rev'd on*

*rehearing on other grounds*, are footnoted as authoritative support for the textual statement. In *Grayson* a government witness, after being confronted on cross-examination with a prior inconsistent extrajudicial statement, was asked on redirect examination if her testimony on direct examination was true. The witness answered in the affirmative. Counsel for defendant moved to strike the answer. The motion to strike was overruled and the action of the trial court in doing so was assigned as error on appeal. The assignment of error was ruled against defendant on appeal. The court did so by tersely stating that the answer was "competent and relevant." In *Boatwright*, one assignment of error centered on the state's attorney having asked the prosecutrix in a rape case, on redirect examination, whether any part of her testimony on direct examination had been untrue, and if any part had been to point it out. With reference thereto the court held: "We do not regard this so violative of the limits of proper interrogation as to make the error, predicated thereupon, serious." The court in *Boatwright* appears to have said that although it was error to permit such questioning, it was not prejudicial error. A careful reading of *State v. McKinney*, supra, causes one to wonder why the state cited it as authority to support its position since none of the issues it disposed of are even remotely comparable to the issue posed by defendant.

■■■ The above mentioned authorities, both pro and con, may be said to project a common principle when viewed collectively—it is improper to ask a witness to pass on the truth vel non of his own testimony, but whether doing so constitutes reversible error depends on the attendant facts and circumstances of each particular case. As initially pointed out, this court does not condone the type of question put to witness Healan by the state. Such questions have

no place in a trial, and when they creep in they defeat attainment of the highly prized but elusive goal of a perfect trial. But an imperfect trial is not per se an unfair trial, and every instance of error is not prejudicial error. The objectional question in this case is immersed in the following facts and circumstances which remove it from the realm of prejudicial error: (1) the existence of substantial evidence apart from witness Healan's testimony to support defendant's conviction for manslaughter; (2) MAI–CR 2.01[2] was read to the jury immediately after it was sworn and before opening statements of counsel were made; and (3) the question was not put to witness Healan until after he was confronted on cross-examination with certain prior inconsistent extrajudicial statements. Finding no prejudicial error associated with defendant's first assignment of error, the same is overruled.

■■■ Defendant next complains: "The trial court erred in allowing the prosecuting attorney to cross-examine the defendant in an improper manner. Specifically, the court erred in allowing the prosecuting attorney to interrupt the defendant while he was testifying in response to questions on cross-examination, but before he could complete his response." In the opening sentence of the argument portion of his brief he broadly alludes to eight different pages of the transcript to augment his second point. A careful reading of each of the eight pages fails to reveal a single instance of interruption. Even more confusing is the fact that the error leveled by defendant and the argument he ostensibly makes in its support don't mesh. The cornerstone of his argument appears to be that nine questions to be found in the transcript references were either argumentative or attempts on the part of the prosecutor to "badger" him. Giving defendant the benefit of his argument supplementing his second point, in

**2.** Said instruction, in part, admonishes the jury: "It is *your duty to determine the facts and to determine them only from the evidence* and the reasonable inferences to be

drawn from the evidence. In this determination, you alone must decide upon the believability of the witnesses and the weight and value of the evidence."

spite of the patent inconsistency between the point as literally stated and the argument made in its support, this court will review the challenged questions in light of the argument. In doing so, it should be noted that the trial court sustained objections to four of the questions and defendant sought no further relief. Thus, the matter is pared to five questions. The remaining questions will be paraphrased for purposes of discussion.

Question No. 1: Defendant was asked if he shot decedent in the back, while decedent was on his stomach trying to get up or after he turned over. Defense counsel objected on the ground that the question was "argumentative and compound". Although the trial court overruled the objection, the prosecutor voluntarily rephrased the question and asked defendant when he shot decedent in the back. Defense counsel lodged no objection to the rephrased question. During its case in chief the state introduced evidence that one of the five wounds sustained by decedent entered his body in the area of his back. It is impossible to perceive how defendant can seriously contend on appeal that the rephrased question was argumentative and any error he belatedly attempts to attach to it on that basis is not well taken.

Question No. 2: When asked what decedent was doing with his "hand" when defendant first pulled the .357 magnum revolver from his waist, defendant replied, "Well, you see, it's, you know, like that [indicating]." The state then asked defendant what decedent did, and in doing so commented, "I don't know it's just like that." Defense counsel objected on the ground that the question and comment were argumentative. The trial court overruled the objection. This court senses no argumentative overtones to either the question or the prosecutor's comment, however ill-advised the latter may have been. They appear to be nothing more than an effort to elicit a verbal description from defendant as to what decedent was doing with his "hand" in order to clarify the record. De-

fendant's vague "indication" was meaningless.

Question No. 3: The prosecutor asked defendant if it was his testimony that decedent was trying to continue an attack upon him with a .357 magnum bullet through his heart and a shattered spinal column. Defense counsel objected on the ground that the question assumed a fact not in evidence, namely, that decedent's spinal column was shattered. The pathologist who performed the autopsy on decedent testified that one of the bullets had gone through decedent's heart and then "hit the spine of the spinal column, the bony vertebra." The pathologist further testified that the bullet was recovered from decedent's "vertebral column" and that a fragment of the bullet "went through the vertebral column." With the added reminder that defendant shot decedent with a .357 magnum revolver at fairly close range, this court is at loss to understand how defendant can contend, seriously or otherwise, that the prosecutor unfairly characterized decedent's spinal column as having been "shattered".

Questions No. 4 and No. 5: Preliminarily, defendant testified on cross-examination that decedent "might" have said something to the effect, "I am not going to hit you." A question or two later the prosecutor asked defendant when decedent made the statement. Defense counsel objected on the ground that the question was argumentative. The objection was overruled and defendant in answering the question testified that he didn't recall the decedent making such a statement. The prosecutor then asked defendant if he hadn't testified "a minute ago" that decedent "might" have made such a statement. Defense counsel objected to this latter question by charging the prosecutor with "badgering" defendant. The objection was overruled, and defendant answered by saying it was possible that decedent said something to that effect. The trial court apparently sensed an evasive attitude on defendant's part concerning a highly pertinent area of evidence touching

upon defendant's claim of self defense. The trial court had the benefit of observing the demeanor of defendant; this court merely has the benefit of the printed record which is sterile at best and falls short of projecting the true complexion of defendant's demeanor. Even so, the record itself bespeaks of defendant's evasiveness.

█ It has long been the recognized rule in this state that trial courts are vested with "considerable discretionary latitude in controlling . . . cross-examination." *State v. Graves*, 352 Mo. 1102, 182 S.W.2d 46, 53 (1944). See also: *State v. Tyson*, 363 Mo. 1242, 258 S.W.2d 651, 655 (1953), and *State v. Mayberry*, 272 S.W.2d 236, 242 (Mo. 1954). Absent a clear showing that they have abused their discretion, appellate courts will not interfere. *State v. Tyson*, supra, and *State v. Mayberry*, supra. Defendant's second assignment of error vis-a-vis the complete factual background in which it reposes has been probed to the hilt. The complained of rulings and the questions to which they relate have been individually and collectively weighed. No abuse of discretion has been found. Defendant's castigation of the trial court because of its alleged failure to keep the prosecutor's cross-examination of him within appropriate bounds is unwarranted.

█ Defendant's final complaint is that the trial court erred in permitting the state to play selected portions from his taped confession (previously offered and admitted into evidence) to the jury during its closing argument. Defendant, absent citation of any supporting authority, contends that the net effect of permitting the state to do so gave it "the advantage of twice introducing and presenting to the jury previously recorded evidence, all to defendant's prejudice and harm." Defendant had obviously lost sight of the primary purpose and function of the state's closing argument in a criminal case—to "marry" the favorable evidence to the offense for which the accused is standing trial and the applicable law laid down in the instructions. The col-

lective experience of this court is not so far removed from the trial arena as to blind it to the fact that one of the most common objections lodged during closing argument is that certain evidence recalled to the jury has been misstated, or is incorrect or nonexistent. Here the prosecutor obviated this common objection by playing back to the jury certain portions of defendant's taped confession rather than relying on his own memory to verbally summarize those portions he wished to emphasize. Defendant's argument, if carried to its logical extremity, would result in an absurdity—the state would be precluded from commenting on the evidence in any manner because doing so would be tantamount to a reintroduction of evidence. Thus, the primary purpose and function of closing argument would be rendered a complete nullity. Neither of the parties have cited any cases from this or other jurisdictions directly in point. It would appear to be within the realm of fair comment to say that the apparent nonexistence of any decided case or cases in this jurisdiction precisely touching upon the point is accounted for by the fact that such procedure has never been questioned. Independent research conducted by this court in other jurisdictions, although failing to uncover any case involving the playing of portions of a taped confession during closing argument, has produced cases where the state, during closing argument, read to the jury signed confessions of accuseds which had previously been admitted into evidence. When questioned on appeal, the procedure was invariably approved. See: *State v. Murray*, 216 N.C. 681, 6 S.E.2d 513, 515 (1940); *State v. Harris*, 74 Wash. 60, 132 P. 735, 737 (1913), *rev'd on other grounds*; and *State v. Baker*, 58 S.C. 111, 36 S.E. 501, 502 (1900), *rev'd on other grounds*. Playing a taped confession to a jury during closing argument and reading a signed confession are deemed so analogous that the cases just cited are persuasive authority that defendant's third point is not well taken. It should be pointed out that defendant makes no claim that the playing

of his taped confession by the state during closing argument was mechanically awkward or otherwise disruptive of the jury's deliberative function; nor does he claim that playing selected portions of his taped confession, as opposed to playing it in its entirety, was prejudicial. As noted, his final point rises or falls on the sole claim that playing portions of his taped confession constituted a reintroduction of evidence. Defendant's final point, ingenious as it may be, is bereft of both logic and case support, and, accordingly, is overruled.

Judgment affirmed.

All concur.