**STATE of Missouri, Respondent,**

v.

**Barth L. WILLIS, Appellant.**

**No. WD36613.**

Missouri Court of Appeals,
Western District.

Jan. 28, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 4, 1986.

Application to Transfer Denied April 15, 1986.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Michael R. Whitworth, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, J., Presiding, and DIXON and LOWENSTEIN, JJ.

DIXON, Judge.

Defendant Barth Willis appeals from his jury-imposed conviction of robbery first degree, § 569.020, RSMo 1978; burglary first degree, § 569.160, RSMo 1978; and armed criminal action, § 571.015, RSMo 1978. The court, acting under the persistent offender statute, sentenced Willis to twenty years for the robbery, ten years for the burglary, and five years for the armed criminal action, and directed that the sentences run concurrently. Defendant asserts the trial court erred in overruling objections to certain cross-examination questions asked of the defendant and other witnesses, in overruling defendant's motion to suppress pre-trial and in-court identifications, in failing to sustain defendant's motion for acquittal, and in permitting the state to introduce statements of defense witnesses which had not been provided to defense counsel.

Chat McCoy owns, and resides at, an apartment building at 3315 Paseo in Kansas City. McCoy was approximately 75 years of age at the time of this incident. He had met the defendant several times when the defendant had come to visit Hattie Green, a resident of the apartment house. At 2:00 or 2:30 in the morning of June 18, 1983, McCoy was watching TV. McCoy heard someone coming down the stairs and then someone kicked in his door. The intruder struck McCoy and forced him to sit down. The intruder pointed a gun at McCoy and told him not to attempt to turn on the burglar alarm or he would "blow his brains out." The intruder was wearing a pair of blue jeans which were frayed at the bottom, white tennis shoes with red laces, a scarf which covered most of his face and black gloves. The intruder stole a telephone, two guns and money. The intruder then forced McCoy into a closet under the stairs and locked the door. McCoy could hear the intruder climbing the stairsteps in the apartment building. McCoy forced his way out of the closet and set off a burglar alarm. No one came down the steps and there was no other exit from the upper floor.

The day before the robbery occurred McCoy had shown the defendant a leather coat. During the robbery, the intruder, upon seeing the leather coat, stated, "I see you've still got this old coat." The intruder was aware of the concealed location of the stolen telephone. Hattie Green also knew the location of the telephone. A police officer arrived and McCoy advised the officer the intruder had gone upstairs. The officer went upstairs to check the apartment rented by Hattie Green. He got no response when he knocked on the door. Ten or fifteen minutes later, another officer went back to the apartment to see if anyone would answer the door. A lady identifying herself as Hattie Green opened the door. She told the officer that he could look around her apartment if he wanted to. As he was looking towards the kitchen, he observed a door that was partially ajar. Behind the door he could see a person with bare legs, wearing white sneakers with red lacings in them, trying to withdraw his foot out of the officer's view. The officer entered the kitchen, asked the subject to stand up, walked him into the living area and conducted a pat-down search of the subject. McCoy came into the apartment and identified the defendant as the man who robbed him. The officer then arrested the defendant. McCoy also recognized the defendant's voice as that of the robber.

Defendant, while being questioned, stated that just because a push-button intercom phone had been stolen did not mean that he had committed the robbery. Defendant had not previously been informed of what items had been stolen.

Defendant first urges that prejudicial error occurred in the cross-examination of defense witnesses. Several witnesses are involved, but the following excerpts from the cross-examination of the defendant demonstrate the defendant's contention:

Q: So if Avette Gray said that she talked to Lonnie there, that wouldn't be telling the truth, would it?

A: No, she probably seen them down to her mother's house but not there.

There was no objection made by defense attorney. A question presented to Sarah Washington went as follows:

Q: So if two other witnesses have testified that Hattie came down and let in Avette and Barth, that wouldn't be true, would it? [No answer.]

This is the only instance in which an objection was lodged. Defendant claims this questioning and comparable but unobjected-to questioning of several other witnesses "invaded the province of the jury" and called for the witness to "draw a conclusion from the testimony of other witnesses." It is asserted that the trial court, by overruling objections to the question, prejudiced defendant's right to a fair trial.

The defense cites *State v. Smith*, 534 S.W.2d 604 (Mo.App.1976), as controlling authority for the determination of error and its prejudicial effect when such questions are asked in cross-examination. The case is inapposite and not authoritative because of the fundamental factual difference between *Smith* and the instant case. In *Smith*, the question asked referred to the truthfulness of the witness's *own testimony* and was addressed to the state's *own* witness. *Id.* at 607.

The defendant concedes that two Missouri cases, without discussion, find no error in cross-examination similar to that in the instant case. *State v. Williams*, 548 S.W.2d 227, 230–31 (Mo.App.1977); *State v. Garner*, 360 Mo. 50, 226 S.W.2d 604, 609 (Mo. 1950). The defendant does not cite any other authority on the issue. Independent research discloses a paucity of Missouri case law on the subject. In the very early case of *Holliman v. Cabanne*, 43 Mo. 568, 570 (1869), the court said, "Witnesses should not give their opinions upon the truth of a statement by another witness, though they may do the same thing in effect by denying the fact stated." This court in *Shearin v. Fletcher/Mayo Associates, Inc.*, 687 S.W.2d 198 (Mo.App.1984), referred to *Holliman v. Cabanne* and rejected a claim of error predicated upon its ostensible holding set forth above.

*Shearin* also refers to two other cases, *Henson v. Kansas City*, 277 Mo. 443, 210 S.W. 13, 17 (1919), and *Eickmann v. St. Louis Public Service Co.*, 363 Mo. 651, 253 S.W.2d 122, 129 (1952), which involved objections to questions asked expert witnesses on the ground that the questions called for opinions on the ultimate facts or issues of the case. The rule of *Henson* and *Eickmann*, that an expert may not so testify, has long since been discarded. C. McCormick, *McCormick on Evidence*, § 12 (3rd ed.1984); FED.R.EVID. 704; *Wessar v. John Chezik Motors*, 623 S.W.2d 599, 602 (Mo.App.1981).

There is probably no such rule as a matter of *substantive* evidence law. None of the standard textbooks make any reference to the rule, and no body of case law appears to exist suggesting such a rule. The text writers and the case law recognize the principle of contradiction, which is implicit in the cross-examination presented in the instant case. See generally C. McCormick, *McCormick on Evidence*, § 47 (3rd ed. 1984); 98 C.J.S. *Witnesses* §§ 629–39 (1957); IIIA J. Wigmore, *Evidence in Trials at Common Law*, §§ 1000–1005 (Chadbourn rev. 1970).

 It is, of course, proper to ask a witness concerning matters testified to by another witness. In no other way could a contradiction be established. It is also true that in framing such a question the prior testimony may be alluded to in order to place the matter before the witness. Despite the foregoing, the particular *form* of the questions in the circumstances of this case was not proper. The questions as framed were argumentative and thus upon a proper objection would have been excluded. There was no objection to the form of the question in the only instance in which any objection was made and no error is demonstrated.

 Defendant complains of the identification testimony by the victim. The victim identified the defendant in the upstairs apartment. The defense asserts that the confrontation occurred while the police officer was "patting down" the defendant. The argument may be fatally flawed factu-

ally, but taken as presented, there is no basis for error. This "hot stand" of a recently arrested or detained suspect is not overly suggestive nor does it involve any encouragement or direction to identify unless other statements or actions by the police are involved. *State v. Dixon*, 627 S.W.2d 77, 79 (Mo.App.1981); *State v. Ralls*, 583 S.W.2d 289, 291 (Mo.App.1979). The identification resulting testimony were not flawed. The defendant's further point that without the identification testimony the evidence is insufficient need not be further addressed.

■ Defendant claims his right to discovery was violated because the state did not furnish the defense counsel with copies of statements the state had obtained from the *defendant's* alibi witnesses. The statements were not within the provisions of Rule 25.03. Defense witnesses' statements are not a part of the material which the rule requires be disclosed.

Judgment and conviction are affirmed.

All concur.