STATE of Missouri, Respondent,

v.

Richard Earl WILLIAMS, Appellant.

No. WD 45825.

Missouri Court of Appeals,
Western District.

Nov. 24, 1992.

**112**

R. Cristine Stallings, Columbia, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and TURNAGE and SPINDEN, JJ.

FENNER, Presiding Judge.

Richard Earl Williams appeals his conviction, after trial by jury, of the class D felony of driving while intoxicated. Williams was sentenced by the court as a prior and persistent offender, pursuant to Sections 577.023 and 558.016, RSMo 1986, to a term of five years. Taken in the light most favorable to the verdict, the evidence was as stated hereafter.

On June 29, 1991, at about 7:00 p.m., Williams drove to the Zipps fast food restaurant in Columbia, Missouri. Williams pulled up to the speaker in the drive-thru lane and attempted to place an order. However, the radio in the van Williams was operating was so loud that the Zipps' employees could not understand what Williams was saying. From the speaker, Williams drove to the drive-thru window which was a distance of three car lengths. It took Williams two or three minutes to drive from the speaker to the window.

When Williams was at the drive-thru window, a Zipps' employee noticed that his eyes were glassy, he "stared off," and he couldn't keep his eyes open. Williams' speech was slurred and he mumbled as he attempted to order. Williams also started singing in the middle of placing his order. He eventually ordered two hamburgers and an order of fries.

Believing that Williams was intoxicated, a couple of Zipps' employees had him pull over in the parking lot telling him that they would have his food in a few minutes. One of the workers then called 911 because she thought Williams was too drunk to drive.

Officer Penny Sapp was dispatched to Zipps. When Officer Sapp arrived at Zipps, she observed Williams' van in the parking lot but did not see anyone in the van. Officer Sapp drove down the street and parked about a block away.

After Officer Sapp left the Zipps lot, Williams drove back to the drive-thru window and picked up his food. Williams then drove off spinning his tires as he pulled onto the street. Once he was on the street, Williams drove at twenty miles per hour in a thirty-five mile per hour zone, then he made a wide left turn onto Seventh Street.

Officer Sapp stopped Williams on Seventh Street. Officer Sapp approached the driver's side of the van and asked Williams for his driver's license. Williams ignored the request, shoved a hamburger in his mouth, and stared straight ahead. Officer Sapp smelled intoxicants about Williams, noticed that his eyes were glassy, bloodshot and fixed.

Officer Sapp repeatedly asked to see Williams' driver's license to no avail. When more officers arrived on the scene, Officer Sapp asked Williams to step out of the van. Williams said he didn't think the officers had a right to stop him, and that he was not going with them.

Williams got out of the driver's seat of the van, started toward the passenger side of the vehicle and reached into a console. Concerned that Williams was reaching for a weapon, the officers entered the van as Williams moved to the back of the van and sat on a cushion. Williams became combative and refused to leave the van. As the officers were forcibly removing him from the van, Williams' artificial leg fell off.

Williams was placed under arrest and put in Officer Sapp's patrol car. As he was being transported to the police station, Williams was read his Miranda rights. Williams said he understood his rights.

Williams was mumbling and his speech was slurred as he talked on the way to the station.

Upon arriving at the police station, Officer Sapp questioned Williams. When asked the time, Williams said it was "Cinderella's time." When asked what he had been doing for the past three hours, Williams said "don't ask." Williams said that he had not been drinking, but when asked if he had used any marijuana in the past seventy two hours he said, "Yes plenty." When asked whether he had been taking any medication or pills, Williams said, "Ask me no questions, I'll tell you no lie."

Officer Sapp read Williams the implied consent law and explained that if he refused a breath and urine sample, his refusal could be used against him in court. Nonetheless, Williams refused Officer Sapp's request for breath and urine samples.

The decision was made to transport Williams to the Boone County Corrections Facility. However, Williams refused to leave his holding cell and had to be carried out.

Testifying at trial, Williams admitted to two prior convictions for driving while intoxicated, a prior conviction for driving with excessive blood alcohol content, a prior conviction for unlawful use of a weapon, and a prior conviction for failure to appear in court on a felony. Williams testified that he did not drink any alcohol on the day of his arrest.

■ In his first point on appeal, Williams argues that there was insufficient evidence to support his conviction for driving while intoxicated.

Review of a challenge to the sufficiency of the evidence is done in the light most favorable to the state, giving the state the benefit of all reasonable inferences and disregarding all contrary evidence and unfavorable inferences. *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987).

A person commits the crime of driving while intoxicated if he operates a motor vehicle while in an intoxicated or drugged condition. § 577.010.1, RSMo 1986. The state is not required to produce results of chemical tests to prove intoxication. Intoxication sufficient to sustain a conviction can be proved by any witness who had a reasonable opportunity to observe an alleged offender. *State v. Ruark*, 720 S.W.2d 453, 454 (Mo.App.1986).

The evidence in the case at bar was sufficient to sustain Williams' conviction. Two employees of Zipps observed Williams at the restaurant and rendered their opinion that he was intoxicated. These individuals observed that Williams had glassy eyes, his speech was slurred, he mumbled, he stared into space, he started singing in the middle of ordering his food, and his driving was impaired and erratic.

Officer Sapp and another officer testified that Williams was intoxicated. Officer Sapp observed Williams spin his tires as he left Zipps and then drive fifteen miles per hour under the speed limit making a wide left turn. Officer Sapp testified to an odor of intoxicants about Williams, that Williams was uncooperative and combative, that his eyes were blood shot and fixed, and that his speech was slurred and mumbled. Williams stuffed food in his mouth when stopped with the reasonable inference being that Williams was attempting to mask the odor of intoxicants observed by Officer Sapp. Williams' responses to questions at the police station were nonsensical, inferring that he was too intoxicated to concentrate and respond appropriately. Williams denied having had any alcohol on the day of his arrest, despite the odor of intoxicants observed by Officer Sapp. Williams also refused to submit to a breath or urine analysis which was admissible as evidence of his guilt. *State v. Corum*, 821 S.W.2d 890, 891 (Mo.App.1992).

Williams' argument that there was insufficient evidence to support his conviction is denied.

■ In his second point, Williams argues that the trial court erred by excluding testimony about his alleged mental illness.

Rule 25.05(A)(4) provides that "[i]f the defendant intends to rely on the defense of mental disease or defect excluding responsibility, disclosure of such intent shall be in the form of a written statement by counsel for the defendant."

When counsel for Williams attempted to examine Officer Sapp at trial in regard to her experience with individuals having a mental illness, the prosecutor objected on the basis of Williams failing to disclose a defense of mental disease or defect. The trial court did not err in sustaining this objection because the record does not reflect that Williams disclosed an intention to rely on a defense of mental disease or defect excluding responsibility.

When Williams took the stand to testify, an objection to him testifying as to whether he had a mental illness and the types of medication he took was sustained. Once again, Williams had not given notice of his intention to rely on a defense of mental disease or defect. Furthermore, Williams did not make a proper offer of proof.

■ When an objection to proffered evidence is sustained, the proponent of the evidence must make an offer of proof in order to preserve the matter for appellate review. *State v. Schneider*, 736 S.W.2d 392, 401 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). An offer of proof must demonstrate the relevancy of the testimony offered, must be specific, and must be definite. *State v. Dagley*, 793 S.W.2d 420, 423 (Mo.App.1990).

In the case at bar, when the objection to Williams' testimony about his mental illness was made, Williams' counsel requested the opportunity to make an offer of proof. Counsel's "offer of proof" was as follows:

> Your Honor, the duty of the defense is that this man acts the way he acts because he has mental problems. He was not under medication at the time. He's now back under medication. The problem that would cause him, that lend him in the penitentiary are directly due to the fact that he was not on medication. And I think that that explains the defense

theory as to why he was acting the way he was. The only reason he was arrested was because of his actions. And this will explain his actions. It goes to the theory of defense, Your Honor, directly connected.

Williams' offer of proof was not specific and definite to show what his testimony would be if allowed. There was no error in the trial court sustaining the objection to Williams' testimony. Furthermore, in spite of the court's ruling, Williams was allowed to testify that he had undergone mental health treatment and that he had taken medication before his arrest. He testified that he had stopped taking medication two months before the incident in question, but started again after his arrest. Williams was allowed to testify to the matters addressed in his offer of proof.

Williams' second point is denied.

■ In his third point, Williams argues that the trial court erred in giving MAI–CR3d 302.04, which defines reasonable doubt. Williams argues that the definition of reasonable doubt given in this instruction violated his due process rights by reducing the state's burden of proof. The definition given in this instruction has been repeatedly approved and challenges on appeal denied. *State v. Blankenship*, 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991).

Williams' third point is denied.

In his final point, Williams argues that the trial court erred in finding him to be a prior and persistent offender. Williams argues that the prosecutor failed to charge and prove that he had two intoxication-related traffic offenses within ten years of a previous intoxication-related traffic offense, as required by Section 577.023.1(2), RSMo Supp.1991, for a finding of persistent offender status. He also argues that the prosecutor failed to charge and prove that he had an intoxication-related traffic offense within five years of the intoxication-related traffic offense that he was on trial for as he argues is required by

Section 577.023.1(3), RSMo Supp.1991, for a finding of prior offender status.

Section 577.023.5, RSMo Supp.1991, requires that the information charge the defendant with all essential facts warranting that he is a prior or persistent offender, that the evidence establish those facts beyond a reasonable doubt, and that the court make findings of those facts.

In the case at bar, the information charged that Williams:

In violation of Section 577.010, RSMo, committed the Class D felony of Driving While Intoxicated, punishable upon conviction under Sections 558.011.1(4), 560.-011 and 577.023.3, RSMo, in that on or about the 29th day of June, 1991, on Business Loop 70 near its intersection with Coats Street, in the County of Boone, State of Missouri, the defendant operated a motor vehicle while under the influence of alcohol, and

On or about February 4, 1986, defendant had pleaded guilty to driving with excessive blood alcohol content, for events occurring on June 25, 1985, in the Circuit Court of Boone County, Missouri.

On or about June 1, 1983, defendant had pleaded guilty to driving while intoxicated, for events occurring on March 30, 1983, in the Circuit Court of Boone County, Missouri, and

Defendant is a prior offender under Sections 558.016 and 557.036.4, RSMo, in that he has pleaded guilty to or has been found guilty of a felony. Defendant is also a persistent offender punishable by sentence to an extended term of imprisonment under Section 558.016 and 557.-036.4, RSMo, in that he has pleaded guilty to or has been found guilty of two or more felonies committed at different times. The felonies are as follows:

1. On or about November 16, 1987, defendant pleaded guilty to the felony of Failure to Appear in the Circuit Court of Boone County, Missouri, and

2. On or about November 16, 1987, defendant pleaded guilty to the felony of Driving While Intoxicated in the Circuit Court of Boone County, all against the peace and dignity of the State.

■ If a charge clearly fails to allege an essential element contained in a statute, it is not a proper charge and does not vest the court with jurisdiction. *State v. Owens,* 740 S.W.2d 269, 270 (Mo.App.1987). However, an information or indictment that charges multiple counts must be read together, thus essential elements can be incorporated by reference or read as part of the entire original charging instrument. *Fults v. State,* 779 S.W.2d 688, 689 (Mo. App.1989). Furthermore, formal defects in an information are waived if not challenged prior to trial. *State v. VanSickel,* 675 S.W.2d 907, 911 (Mo.App.1984). Williams challenges the information against him for the first time on appeal.

■ Section 577.023.1(2), RSMo Supp. 1991, defines a persistent offender for purposes of an intoxication-related traffic offense as "one who has pleaded guilty to or has been found guilty of two or more intoxication-related traffic offenses committed at different times within ten years of a previous intoxication-related traffic offense conviction." This definition requires two offenses within ten years of a previous conviction for persistent offender status. *State v. Stewart,* 832 S.W.2d 911, 913 (Mo. banc 1992).

The information against Williams alleged and the state proved: (1) that on or about February 4, 1986, Williams pleaded guilty, in the Boone County Circuit Court, to driving with excessive blood alcohol content for events occurring on June 25, 1985; (2) that on or about June 1, 1983, Williams pleaded guilty, in the Boone County Circuit Court to driving while intoxicated for events occurring on March 30, 1983; and (3) that on or about November 16, 1987, Williams pleaded guilty, in the Boone County Circuit Court, to the felony of driving while intoxicated. The form in which these prior convictions were set out in the information should not be followed as a model charge. Nonetheless, the defect in the information, by the failure to group and delineate as such, the prior convictions relied upon to establish prior and persistent status, was of a formal rather than an essential nature. Reading the information as a whole, it suf-

ficiently plead that Williams had pleaded guilty to two intoxication-related traffic offenses committed at different times within ten years of a previous intoxication-related traffic offense conviction.

█ Section 577.023.1(3), RSMo Supp. 1991, defines a prior offender for purposes of an intoxication-related traffic offense as "one who has pleaded guilty to or has been found guilty of an intoxication-related traffic offense within five years of a previous intoxication-related traffic offense conviction."

█ Williams argues that Section 577.-023.1(3), RSMo Supp.1991, requires that the state charge and show that he had an intoxication-related traffic offense within five years of the offense for which he was on trial. The clear language of Section 577.023.1(3) makes no such requirement. For prior offender status, Section 577.023.-1(3) requires that the defendant has pleaded guilty or been found guilty of an intoxication-related traffic offense within five years of a previous intoxication-related traffic offense. Section 577.023.1(3) does not require a finding that the defendant had an intoxication-related traffic offense within five years of the intoxication-related traffic offense for which the defendant is on trial for prior offender status. To show prior offender status under Section 577.-023.1(3), the state must plead and prove two prior offenses within five years of each other, not that a prior conviction occurred within five years of the offense charged. *See State v. Stewart,* at p. 914.[1]

The judgment is affirmed.

All concur.

---

1. It is noted that the offense for which Williams was on trial occurred on June 29, 1991, which was within five years of Williams having plead guilty to the felony of driving while intoxicated on November 16, 1987. Nonetheless, *Stewart* requires proof of two prior offenses within five years of each other to establish prior offender status under Section 577.023.1(3). *State v. Stewart,* at p. 914.