STATE of Missouri, Respondent,

v.

Matthew Z. SAVORY, Appellant.

No. WD 48671.

Missouri Court of Appeals,
Western District.

Feb. 28, 1995.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and
BRECKENRIDGE and SMART, JJ.

HANNA, Presiding Judge.

The defendant, Matthew Z. Savory, was convicted by a jury of forcible rape, § 566.030, RSMo Supp.1992, two counts of kidnapping, § 565.110, RSMo 1986, and three counts of armed criminal action, § 571.015, RSMo 1986. He was sentenced to life imprisonment for the rape conviction, to be served consecutively with sentences of ten years for each count of kidnapping, ten years for one count of armed criminal action, and life imprisonment for the other two counts of armed criminal action. The defendant appeals his convictions, alleging improper cross-examination, erroneous exclusion by the trial court of certain out-of-court statements and improper closing argument by the prosecution.

On July 17, 1992, the two twelve-year-old victims, N.G. and V.T., were walking to visit some relatives at 30th and Indiana in Kansas City, Missouri. They were approached on the street by the defendant and John Williams. The defendant pulled out a silver .22 caliber revolver and forced the victims to come over to his house.

When they reached defendant's house, the defendant handed Mr. Williams the gun and went around back to unlock the door. The victims were then forced inside at gunpoint.

The defendant took N.G. into a back bedroom and raped her. V.T. remained in the front room with Mr. Williams and the defendant's brother, who pulled a gun out from under the couch and started playing with it. Eventually, the two men let V.T. leave the house. She ran to N.G.'s father's house and the police were summoned. A number of N.G.'s family members drove to the defendant's house.

When the police had arrived and surrounded the house, N.G. was allowed to leave the house through the back door. After an hour-long stand off, the occupants of the house came out and were arrested. The defendant's defense at trial was that, although he and his accomplices had exhibited guns in the presence of the victims, they did not threaten them, and N.G. had consented to the sexual intercourse. He was convicted by a jury, and this appeal followed.

■ In his first point, the defendant argues that the trial court erred in permitting the assistant prosecuting attorney to ask improper questions during the cross-examination of defense witnesses. Specifically, the defendant refers to four instances during the trial when the assistant prosecutor asked defense witnesses whether certain state witnesses had lied during their testimony. He argues that "the questions were argumentative and invaded the province of the jury when the determination of the witnesses' credibility was for the jury and not for other witnesses and distorted the state's burden of proof." [1]

The first such incident occurred when the state was cross-examining the defendant's brother about when he had removed the shot gun from under the couch. V.T. had previously testified that the brother had started playing with the gun. The brother, on the other hand, denied playing with it and testified that he had put it in the oven to keep it away from the girls. The following exchange took place:

---

1. We note that the defendant does not come before this court with clean hands. During cross-examination of the victim, N.G., defense counsel repeatedly asked N.G. whether detectives, police officers and "anybody who says anything different than what you say" were lying.

Q. Right away. So that if [V.T.] had said that you pulled it out and started playing with it, would that be a lie?

A. Yes, Sir.

[DEFENSE COUNSEL]: Objection, Your Honor. This is a mischaracterization. He's trying to have this gentleman comment on testimony of other people, and it's very improper.

THE COURT: This is cross-examination. You may proceed.

Q. I'll ask you again. If [V.T.] came in and said that you pulled that out and started playing with it, would she be lying?

A. Yes, sir.

Later, the prosecutor questioned the defendant's brother about another witness's testimony that, before the police arrived, the defendant had come out of the house pretending to have a gun. He asked the witness the following:

Q. Now, were you standing across the street or in front of the house so that you could have seen if [defendant] came out and made a motion like for a gun? Could you have seen that from inside the house?

A. Yes, sir.

Q. You could have seen that?

A. Yes, sir.

Q. So if Mr. Ira Brown, [N.G.'s] father, said that [defendant] came out and did that, Mr. Ira Brown would be lying?

A. Yes, sir.

The next example set forth by the defendant occurred during the cross-examination of defense witness, John Williams, and addressed the same facts as above:

Q. If Mr. Ira Brown, [N.G.'s] father, came in and said that [defendant] came out front and looked at him and reached under his shirt and acted like he had a gun under his shirt, would he be lying?

[DEFENSE COUNSEL]: Objection, Your Honor; he's asking for this witness to comment on another witness's testimony, which would be improper.

THE COURT: Overruled.

Q. He would be lying because you were there that day?

A. Yes.

The final example transpired during the cross-examination of the defendant, when the assistant prosecutor was asking the defendant about why he had given John Williams the gun. The victims had testified that when the defendant left them on the street to go unlock his door, he had given the gun to Mr. Williams. The defendant testified that he had passed it furtively to Mr. Williams so that it would not go off as he jumped the fence. The assistant prosecutor then asked the following:

Q. And you gave the gun to John Williams because you didn't want it to accidentally go off as you went behind the houses and climbed the fence; is that correct?

A. Yes, that's true.

Q. You really gave the gun to John Williams because you had to leave the girls, didn't you?

A. No, sir.

Q. So that when they said that, they're both lying?

A. Well, I was in their presence as they testified that I gave it to John—

■■■ The law states that "[w]itnesses should not give their opinions upon the truth of a statement by another witness, though they may do the same thing in effect by denying the fact stated." *Holliman v. Cabanne*, 43 Mo. 568, 570 (1869). However, it is proper for an attorney, through cross-examination, "to pit the testimony of the State's witnesses against that of the [defendant] by way of relative comparison, as to which one was telling the truth." *State v. Garner*, 360 Mo. 50, 226 S.W.2d 604, 609 (1950).

■■ In *State v. Willis*, 706 S.W.2d 265 (Mo.App.1986), a case in which the state had asked questions almost identical to those asked in this case, this court held:

It is, of course, proper to ask a witness concerning matters testified to by another witness. In no other way could a contradiction be established. It is also true that

in framing such a question the prior testimony may be alluded to in order to place the matter before the witness. Despite the foregoing, the particular *form* of the questions in the circumstances of this case was not proper. The questions as framed were argumentative and thus upon a proper objection would have been excluded.

*Id.* at 267. Therefore, when seeking to expose contradiction between the testimony of several witnesses, an attorney may not directly ask one witness if another was lying. Certainly there are proper and more effective ways to reveal inconsistencies in witnesses' testimony. *See, e.g., Garner,* 226 S.W.2d at 609; *State v. Henton,* 753 S.W.2d 19, 21–22 (Mo.App.1988).

■ The questions asked by the state were argumentative and the objections to them should have been sustained. The issue, therefore, is whether the error was prejudicial. The defendant concedes that none of the cases he cited held that the questions constituted reversible error. There is no basis in the record to support the defendant's assertion that the state, by asking these questions, sought to restructure the controversy as "an inter-family squabble" or to distort the state's burden of proof.

The defendant has failed to show that he was prejudiced by the questions, especially since defense counsel asked N.G. similar questions during cross-examination. It is readily apparent from the evidence presented that the state's witnesses and the defense witnesses were in drastic disagreement as to the events of the day, and that the jury, therefore, had to determine the credibility of the witnesses in order to render their verdict. Defendant has not shown that the erroneous questions and answers affected the jury's decision.

Despite the fact that, under the facts of this case, we cannot say that the error was so prejudicial as to require reversal, we caution against the use of this type of questioning. Argumentative questioning of this type should not be continued, and objections to such questions should be sustained. Point denied.

■ In his second point, the defendant argues that the trial court erred in sustaining the state's objections to two hearsay statements. He claims that the statements were not hearsay because they were not offered to prove the truth of the matter asserted, but rather would have been used to prove the mental state of the declarants and their present sense impressions.

The first event about which the defendant complains arose when Shelley Riley was testifying. Ms. Riley lived two doors down from the defendant. She testified that she saw the victims enter the house, and then later saw one victim leave the house, "telling the other young lady that was in the house to come on." Defense counsel asked for the exact words used by V.T., the prosecutor objected and the trial court sustained the objection.

The second time occurred during defense counsel's examination of John Williams. Mr. Williams testified that at some point during the evening, there was a knock at the door and he looked out the window and told N.G. that there was a truck and a Lincoln outside. Then Mr. Williams recounted, "And then [N.G.] was naming people, like, that's my auntie, that's my uncle—" The assistant prosecutor objected and again the trial court sustained the objection.

■ However, when an objection to proffered evidence is sustained, the proponent of that evidence must make an offer of proof in order to preserve the issue for appellate review. *State v. Williams,* 847 S.W.2d 111, 114 (Mo.App.1992). An offer of proof must show the relevancy of the evidence sought to be admitted, must be specific, and must be definite. *Id.* After the objections were sustained, the defendant made no offer of proof as to what the witnesses' testimony would have been had they been allowed to answer the questions. He further failed to explain why the testimony was relevant and under which exception to the hearsay rule the statements fell. As such, the issue of the admissibility of the hearsay statements was not properly preserved for appellate review. Without knowing what the hearsay statements would have

been, we have no way of judging their admissibility. Point denied.

In his final point, the defendant argues that the trial court erred in failing to grant a mistrial, *sua sponte,* during the prosecutor's closing argument. Specifically, the defendant refers to the following statement by the prosecutor:

> I submit to you, we would not have gone through a year's worth of reports and preliminary hearings and depositions and cross-examination if this was some kind of concoction, some kind of a grand scheme to set Mr. Savory up.

The defendant acknowledges that the argument was neither objected to nor raised in his motion for new trial and requests plain error review pursuant to Rule 30.20. He claims that "the statements implied knowledge of additional facts not presented to the jury and injected the prosecutor's personal opinions and experiences into the case."

It is well settled that "[r]elief should be rarely granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explanation." *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc), *cert. denied,* — U.S. —, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994) (*quoting State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986)). We have examined the closing arguments in their totality and in light of defendant's claims of error and find that no relief is warranted in this case. Point denied.

Judgments of conviction affirmed.

All concur.