

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108761 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | 18JE-CR02781-01 |
| | ) | |
| FREDERICK J. BROWN, | ) | Honorable Brenda Stacey |
| | ) | |
| Appellant. | ) | FILED: March 23, 2021 |

### Introduction

Frederick Brown ("Brown") appeals from the trial court's judgment and sentence of conviction entered upon a jury verdict finding him guilty of one count of unlawful use of a weapon. Brown's sole point on appeal argues the trial court plainly erred in failing to intervene *sua sponte* when the State questioned a defense witness about the veracity of the victim's testimony, which was conflicted on whether Brown was armed on the night in question. Brown asserts that this questioning resulted in manifest injustice because, given the testimony, the jurors' finding of guilt was necessarily premised on their resolution of the credibility of the two witnesses at issue. We find the State's questions were improper, but that Brown has failed to show manifest injustice resulted therefrom. Given our standard of review under plain error, we must therefore affirm the judgment and sentence of conviction.

### Factual and Procedural Background

Brown does not challenge the sufficiency of the evidence supporting his conviction, and we therefore only briefly summarize the evidence presented at trial, viewed in the light most favorable to the verdict. *See State v. Kunonga*, 490 S.W.3d 746, 752 (Mo. App. W.D. 2016).

The State charged Brown with one count of unlawful use of a weapon, in violation of Section 571.030,[1] for acting with Francis Palazzi ("Palazzi") to shoot a firearm at Matthew Anderson's vehicle. The only two individuals to testify at trial who were present during the offense were Matthew Anderson ("Victim") and Stephanie Johnson ("Johnson"), Brown's girlfriend at the time.

Portions of the events surrounding the offense—particularly Palazzi and Victim's conduct—were undisputed. It was undisputed that, on the night of the incident, Victim went to Johnson's house to purchase pain pills and stayed to consume illegal drugs with Johnson and another individual, and that Brown and Palazzi arrived together later. Palazzi parked his vehicle behind Victim's in Johnson's driveway, blocking Victim's vehicle, and Victim reversed into Palazzi's vehicle in his attempt to leave. Palazzi was in Johnson's driveway when Victim reversed into his vehicle, and Palazzi shot a pistol at Victim's vehicle, shattering the front passenger window and injuring Victim. After being shot at, Victim drove his vehicle from Johnson's house to a nearby gas station, where he sought help. When responding law enforcement officers later went to investigate the scene, they discovered shotgun shell casings and spent .45 caliber pistol cartridges on the ground outside Johnson's house.

The testimony presented at trial diverged, however, as to the events leading up to the shooting—specifically as to Brown's involvement therein. Victim testified that Brown was armed with a shotgun when he arrived at Johnson's house. Victim further testified that Brown

---

[1] All statutory references are to the Revised Statutes of Missouri (cum. supp. 2018), unless otherwise indicated.

came outside shortly after Victim went to leave Johnson's house, that Brown placed a cinder block in front of Victim's vehicle to block his vehicle between the cinder block and Palazzi's parked vehicle, and that Brown approached Victim's vehicle on the driver's side armed with a pistol while Palazzi approached the passenger side. Contrarily, Johnson testified that Brown was unarmed when he arrived at her house and that it was Palazzi who arrived with two firearms. Johnson testified that Victim and Palazzi left her residence at the same time, but that Brown stayed with her inside the house. Johnson stated that she heard arguing outside and she and Brown went outside to her porch, where she observed Palazzi attempt to remove Victim from Victim's vehicle. Johnson further testified that Brown, unarmed, approached Victim's vehicle to try to diffuse the situation, but that Victim reversed into Palazzi's vehicle and Palazzi responded by firing two shots at Victim's vehicle.

After a little more than an hour of deliberation, the jury found Brown guilty of unlawful use of a weapon as charged. After finding Brown to be a prior and persistent offender under Section 558.016, the trial court sentenced him to a total of fifteen (15) years in the Missouri Department of Corrections.

This appeal follows.

Standard of Review

Brown acknowledges that his claim of error was not preserved, and he requests plain error review under Rule 30.20.[2] We review unpreserved claims of error in our discretion. Mo. R. Crim. P. 30.20.[3]

---

[2] Brown neither objected to the questioning at trial nor raised the issue in his motion for new trial, and therefore we may only review for plain error under Rule 30.20. *See State v. Tramble*, 383 S.W.3d 34, 38 (Mo. App. E.D. 2012).
[3] All rule references are to the Missouri Rules of Criminal Procedure (2020), unless otherwise indicated.

Plain errors are only those that are evident, obvious, and clear. *State v. Roper*, 136 S.W.3d 891, 900 (Mo. App. W.D. 2004). To constitute actionable, reversible error, any plain error found must result in manifest injustice or a miscarriage of justice. *Id.* "To hold that a miscarriage of justice or a manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." *Id.* at 903. The appellant bears the burden of demonstrating plain error and a resulting manifest injustice or a miscarriage of justice. *Id.* at 900.

Discussion

In his sole point on appeal, Harris argues the trial court plainly erred in failing to intervene *sua sponte* when the State questioned Johnson about the veracity of Victim's testimony that Brown was armed on the night in question. Brown asserts that this questioning resulted in manifest injustice because, given the testimony, the jurors' finding of guilt was necessarily premised on their resolution of the credibility of the two witnesses at issue. We agree that the State's questions were improper. However, we decline to opine on whether it was plain error for the trial court not to intervene *sua sponte* and issue a curative instruction, given our conclusion that Brown has failed to demonstrate a manifest injustice resulted therefrom.

Brown here challenges two specific instances in which he contends the State improperly asked Johnson to comment on the veracity of Victim's testimony. The challenged exchange, which occurred during the State's cross-examination of Johnson, was as follows:

> Q [State]: But Fred Brown had a shotgun that night, didn't he?
> A [Johnson]: No, sir.
> Q: You're sure about that?
> A: Yes.
> Q: **So if [Victim] is telling us that, he's just making that up?**
> A: I don't know what he is telling you, but I can tell you that he didn't walk in my house with a shotgun that night.

4

Q: Well, I'm not asking if he walked into your house. Did you see Fred Brown at any time with a shotgun?
A: No, sir.
Q: You never saw him with a shotgun?
A: No.
Q: Do you have a shotgun at your house?
A: No.
Q: And your testimony is that Francis Palazzi followed [Victim] outside?
A: Yes, sir.
Q: But [Brown] also went outside, didn't he?
A: [Brown] walked out when I did.
Q: He followed [Victim] outside, didn't he?
A: No. He walked out when I did. We were in the house arguing in the kitchen -- in my back bedroom, and when I walked out [Brown] walked out with me.
Q: And he had a pistol?
A: No.
Q: You never saw [Brown] with a pistol?
A: I seen [Palazzi] with two guns.
Q: I'm asking about [Brown].
A: No.
Q: You never saw [Brown] with a pistol?
A: No.
Q: **So if [Victim] tells us that, he's making that up, too?**
A: I'm not going to say he's making it up. I don't know what he's saying to say that. I'm saying for myself I never seen him with a pistol.
Q: You never saw Fred Brown with a pistol?
A: No, sir.

Brown argues the State's two questions to Johnson, asking her to opine on the veracity of Victim's contrary testimony, were improper and that the trial court committed plain error in failing to intervene *sua sponte* to stop the questioning and issue a curative instruction.

We are generally hesitant to convict a trial court of failure to intervene *sua sponte*, particularly during witness examination. *Roper*, 136 S.W.3d at 900, 902–03. "Uninvited interference by the trial judge in trial proceedings is generally discouraged, as it risks injecting the judge into the role of a participant and invites trial error." *Id.* at 902. As such, "the trial court should only take independent action in the most unusual and exceptional circumstances." *Id.* at 903; *see also State v. D.W.N.*, 290 S.W.3d 814, 819 (Mo. App. W.D. 2009) ("Missouri courts reject invitations to criticize trial courts for declining to *sua sponte* take action on behalf

5

of a party during witness examinations"); *State v. Bescher*, 247 S.W.3d 135, 141 (Mo. App. S.D. 2008) (noting "trial judge is in the best position to judge the prejudicial effect of a question and should exercise *sua sponte* action only in exceptional circumstances").

However, "[t]he law in Missouri is clear that witnesses may not be asked to give their opinion on the truth or veracity of another witness'[s] testimony." *Bescher*, 247 S.W.3d at 140; *Roper*, 136 S.W.3d at 900 (noting "[t]he principle that a witness should not be asked to opine upon the truth or veracity of []other witnesses' testimony has a long history in Missouri"). Although it is effective—and can be proper—to emphasize inconsistencies in witnesses' testimonies and to position the testimony of State's witnesses against those of the defendant, "an attorney may not directly ask one witness if another was lying." *State v. Savory*, 893 S.W.2d 408, 410–11 (Mo. App. W.D. 1995).

> Certainly it may be acceptable for one witness to be asked about whether some aspect of the testimony of another was accurate. But to ask a witness for an opinion as to whether another witness is lying is to invite an opinion as to someone else's state of mind that the witness is not qualified to give. We do not generally invite a witness to speculate on another witness's ability to accurately perceive and remember facts; there is even less justification for allowing a witness to speculate as to whether another witness is deliberately attempting to mislead the fact finder.

*State v. Walters*, 241 S.W.3d 435, 439 (Mo. App. W.D. 2007).

Here, the State twice asked Johnson on cross-examination whether the Victim was "making up" portions of his testimony that conflicted with her own. Under well-established Missouri law, these questions were improper. *See, e.g.*, *Bescher*, 247 S.W.3d at 141 (finding "facial error in the prosecutor asking Defendant on at least nine occasions whether other witnesses were lying or had any reason to lie"); *Roper*, 136 S.W.3d at 902 (finding prosecutor asking defendant whether police officers were lying to be improper).

6

The question presented to us here, though, is not whether such questioning was improper; instead, it is whether the trial court's failure to intervene and respond *sua sponte* to this improper conduct constituted plain error. *See Roper*, 136 S.W.3d at 902. Ultimately, we need not answer the question of whether plain error occurred because Brown has failed to show that manifest injustice resulted under the circumstances here. *See id.* at 903.

"To hold that a miscarriage of justice or a manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." *Id.* In *State v. Roper*, the Western District found that the defendant could not establish manifest injustice resulting from the prosecutor's improper questions to the defendant about the veracity of police officers' testimony because there was sufficient evidence of the defendant's guilt and because the credibility of the prosecution and defense witnesses was already "a key issue in the case." *Id.* The *Roper* court explained that, "[w]here there is a dramatic difference between the testimony presented on behalf of the State and the defendant, the prejudicial effect of such questions, albeit improper, may be lessened or more difficult to establish." *Id.*

Like in *Roper*, Brown's defense rested on the jury's credibility determination of the prosecution and defense witnesses. The focal point of Brown's defense, based on Johnson's testimony, was that Brown was not acting with Palazzi on the night in question and that he was not involved with or near Palazzi when Palazzi shot at Victim's vehicle. Therefore, the jury in this case was already tasked with making a credibility determination to resolve the discrepancies between Johnson and Victim's testimonies, which lessens any effect from the State's improper questioning. *See id*; *see also Savory*, 893 S.W.2d at 411 (finding no prejudice from State asking four different witnesses if other witnesses were lying, where it was "readily apparent from the

7

evidence presented that the state's witnesses and the defense witnesses were in drastic disagreement as to the events of the day, and that the jury, therefore, had to determine the credibility of the witnesses in order to render their verdict"); *cf. Ballard v. State*, 408 S.W.3d 327, 333 (Mo. App. E.D. 2013) (finding post-conviction movant could not demonstrate prejudice from failure to object to State questioning movant about credibility of State's witnesses, where "parties' relative credibility was already at issue" and thus "Movant failed to show how the improper questions affected the jury's decision").

Moreover, here, Johnson answered the State's questions in such a way that she declined to call Victim a liar or opine on his state of mind. In response to the State's question about whether Victim was "making up" that Brown was armed with a shotgun when he arrived, Johnson stated "I don't know what [Victim] is telling you, but I can tell you that [Brown] didn't walk in my house with a shotgun that night." Similarly, in response to the State's question of whether Victim was "making up" that he saw Brown with a pistol outside Johnson's house, Johnson answered "I'm not going to say [Victim is] making it up. I don't know what he's saying to say that. I'm saying for myself I never seen [Brown] with a pistol." Johnson's specific answers to these questions lessen the effect of the State's improper questioning. *See Walters*, 241 S.W.3d at 439 (finding no prejudice from State asking defendant whether police witness was lying, in part because defendant "avoided answering the specific question seeking comment on [witness's] veracity, responding only that [witness] said 'some things' that 'were not true'"); *cf. Harrison v. State*, 301 S.W.3d 534, 540–41 (Mo. App. S.D. 2009) (stating post-conviction movant's response to State's question whether another witness was lying weighed against finding prejudice because "movant avoided the trap of expressing an opinion as to the interviewing officer's state of mind and calling the officer a liar").

8

Further, there was sufficient evidence here to support Brown's conviction.[4]  The jury convicted Brown of unlawful use of a weapon as charged, in that he "aided or encouraged Francis Palazzi in committing the offense" when Palazzi knowingly shot a firearm at Victim's motor vehicle.  It is not in dispute that Palazzi was armed with a pistol and shot at Victim's vehicle.  Victim testified that Brown arrived armed with Palazzi, that Brown blocked Victim's vehicle from leaving, and that Brown and Palazzi both approached his vehicle armed with pistols.  Victim's testimony, even standing alone, was sufficient to support Brown's conviction under an accomplice liability theory.  *Cf. State v. Sistrunk*, 414 S.W.3d 592, 598 (Mo. App. E.D. 2013) ("Victim's testimony standing alone was sufficient evidence for the jury to find, beyond a reasonable doubt, that Defendant acted in concert with another … [and] facilitated the robbery with the use of a deadly weapon or instrument").  The sufficient evidence supporting Brown's conviction weighs against finding that the error identified here was outcome-determinative such that it resulted in manifest injustice.  *See Bescher*, 247 S.W.3d at 141 (finding no manifest injustice from State questioning defendant "on at least nine occasions whether other witnesses were lying or had any reason to lie," where substantial evidence supported defendant's conviction).

Given the above circumstances of this case, Brown has failed to demonstrate that a miscarriage of justice or manifest injustice occurred.  Brown had the burden of showing that any alleged error was outcome-determinative in that the jury's verdict would have been different but for the trial court's failure to take *sua sponte* action regarding the State's improper questioning.  *See Roper*, 136 S.W.3d at 903.  We are not convinced there is a reasonable probability that the verdict would have been different had the trial court taken action.  Therefore, despite the clear

---

[4] We note that Brown has not challenged the sufficiency of the evidence supporting his conviction on appeal.

impropriety of the State's conduct,[5] Brown has not met his burden of demonstrating he is entitled

to relief under Rule 30.20.  *See id.* at 904.

Point I is denied.

## Conclusion

The trial court's judgment and sentence of conviction is affirmed.

---

[5] The Western District has expressed similar sentiments in both *State v. Savory*, 893 S.W.2d 408 (Mo. App. W.D. 1995) and *State v. Roper*, 136 S.W.3d 891 (Mo. App. W.D. 2004), and we end with their words of caution:
> Despite the fact that, under the facts of this case, we cannot say that the error was so prejudicial as to require reversal, we caution against the use of this type of questioning.  Argumentative questioning of this type should not be continued, and objections to such questions should be sustained.

*Savory*, 893 S.W.2d at 411; *see also Roper*, 136 S.W.3d at 903–04 ("[w]hile we ultimately conclude that a manifest injustice or miscarriage of justice did not occur in the proceedings below, we do not want to minimize the fact that the prosecutor's questioning of [defendant] clearly violated our holding in *State v. Savory*, and constituted misconduct.  Such questioning lacks any probative purpose and will not be condoned, as it invites reversible error").

_____

Robin Ransom, Presiding Judge

Sherri B. Sullivan, J., and
Lisa P. Page, J., concur.

11